In The

# United States Court Of Appeals For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Petitioner – Appellee,*

v.

## THEODORE MACON CARRINGTON, JR.,

*Respondent – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

---

### BRIEF OF APPELLANT

---

**John G. Baker**
FEDERAL PUBLIC DEFENDER FOR THE
  WESTERN DISTRICT OF NORTH CAROLINA

**Joshua B. Carpenter**
APPELLATE CHIEF
**One Page Avenue, Suite 210**
**Asheville, NC 28801**
**(828) 232-9992**

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iiiii

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT........................................................... 2

STATEMENT OF THE ISSUE ................................................................. 2

STATEMENT OF THE CASE................................................................... 2

I.   Initial Charges and Determination of Incompetency ............................. 3

II.  Restoration Proceedings: Carrington's criminal-defense lawyer
     preserves a timeliness objection to be pursued in the parallel civil-
     commitment proceeding. ............................................................... 4

III. Civil-Commitment Proceeding: Carrington's civil-commitment
     lawyer fails to raise the dispositive timeliness objection. .......................... 8

IV.  Initial Appeal(s): This Court declines to address the timeliness
     issue because it had not been raised in Carrington's civil-commitment
     proceeding. ................................................................................ 9

V.   Rule 60(b) Proceedings................................................................. 13

SUMMARY OF ARGUMENT.................................................................. 16

STANDARD OF REVIEW ....................................................................... 19

ARGUMENT ........................................................................................... 20

The district court abused its discretion when it denied Rule 60(b) relief in the
face of prior counsel's failure to raise a meritorious timeliness objection to
Carrington's civil commitment. ................................................................. 20

I.   Carrington's timeliness claim is correct on the merits: The delay in his pre-certification custody was unreasonable, rendering him ineligible for commitment under this Court's precedent. ....................................... 21

    A.  The § 4241(d) custody period began with the Middle District's commitment order on August 23, 2021. ......................................... 24

        1.  The plain statutory text supports Carrington's interpretation of § 4241(d). ...................................... 25

        2.  The government's alternative interpretation cannot be squared with the broader statutory context. .......................................... 30

        3.  The constitutional-doubt canon also precludes the government's interpretation......................................................... 35

        4.  The non-binding authority cited by the district court is not persuasive. ................................................. 37

    B.  The nine-month period between commitment and certification was unreasonable. ................................................ 39

    C.  Alternatively, even under the government's interpretation, the pre-certification delay was still unreasonable. ................................. 41

II.  Counsel performed unreasonably by failing to assert the timeliness claim; no conceivable strategic purpose can justify that failure. ............................................................. 44

III. Relief is warranted under Rule 60(b)(6). .............................................. 50

CONCLUSION ................................................................ 55

REQUEST FOR ORAL ARGUMENT ..................................................... 55

CERTIFICATE OF COMPLIANCE ......................................................... 56

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Allen v. Stein*,
  165 F.4th 272 (4th Cir. 2026) ................................................................19, 53

*Bixby v. Stirling*,
  90 F.4th 140 (4th Cir. 2024) ...................................................................... 51

*Clark v. Martinez*,
  543 U.S. 371 (2005) .................................................................................... 36

*Erlenbaugh v. United States*,
  409 U.S. 239 (1972) .................................................................................... 34

*FTC v. Ross*,
  74 F.4th 186 (4th Cir. 2023) ...................................................................... 54

*Henson v. Fid. Nat'l Fin., Inc.*,
  943 F.3d 434 (9th Cir. 2019) ...................................................................... 53

*In re Henry B.*,
  159 A.3d 824 (Me. 2017) ............................................................................ 44

*In re West*,
  103 F.4th 417 (6th Cir. 2024) .................................................................... 53

*Jackson v. Indiana*,
  406 U.S. 715 (1972) ................................................................................17, 42

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*,
  452 U.S. 18 (1981) ...................................................................................... 44

*McCoy v. Louisiana*,
  584 U.S. 414 (2018) ................................................................................18, 49

*McMann v. Richardson,*
  397 U.S. 759 (1970) ................................................................ 44

*Russello v. United States,*
  464 U.S. 16 (1983) .................................................................. 33

*Strickland v. Washington,*
  466 U.S. 668 (1984) ................................................................ 44

*United States v. Alhindi,*
  97 F.4th 814 (11th Cir. 2024) ............................................37, 42

*United States v. Berry,*
  142 F.4th 184 (4th Cir. 2025) ............................................... 10

*United States v. Carrington,*
  91 F.4th 252 (4th Cir. 2024) ........................................... passim

*United States v. Carrington,*
  2024 WL 243317 (4th Cir. 2024) ..................................... passim

*United States v. Carter,*
  583 F. Supp. 3d 94 (D. D.C. 2022) ............................. 28, 31, 32

*United States v. Carthorne,*
  878 F.3d 458 (4th Cir. 2017) ................................................45, 47

*United States v. Comstock,*
  560 U.S. 126 (2010) ............................................................... 10

*United States v. Curbow,*
  16 F.4th 92 (4th Cir. 2021) ............................................. passim

*United States v. Donnelly,*
  41 F.4th 1102 (9th Cir. 2022) ......................................... passim

*United States v. Freeman,*
  24 F.4th 320 (4th Cir. 2022) ................................................44, 45

*United States v. Lara*,
  671 F. Supp. 3d 1257 (D. N.M. 2023)............................................38, 39, 43

*United States v. Magassouba*,
  544 F.3d 387 (2d Cir. 2008)........................................................ 37

*United States v. McCarthy*,
  703 F. Supp. 3d 1377 (M.D. Fla. 2023)....................................38, 43

*United States v. McNeil*,
  126 F.4th 935 (4th Cir. 2025) ........................................ passim

*United States v. Palomba*,
  31 F.3d 1456 (9th Cir. 1994) ...................................................... 47

*United States v. Quintero*,
  995 F.3d 1044 (9th Cir. 2021)..................................................... 35

*United States v. Rendon-Romero*,
  738 F. Supp. 3d 697 (E.D. N.C. 2024)....................................... 37

*United States v. Slocum*,
  106 F.4th 308 (4th Cir. 2024) ...............................21, 44, 45, 47

*United States v. Wayda*,
  966 F.3d 294 (4th Cir. 2020) ........................................ passim

*United States v. Welsh*,
  879 F.3d 530 (4th Cir. 2018) ..................................................... 50

*Vitek v. Jones*,
  445 U.S. 480 (1980) .................................................................. 44

*Wachovia Bank v. Schmidt*,
  546 U.S. 303 (2006) .................................................................. 34

*Wall v. Rasnick*,
  42 F.4th 214 (4th Cir. 2022) ..................................................... 19

v

*Wudi Industrial (Shanghai) Co., Ltd. v. Wong*,
  70 F.4th 183 (2023).................................................................. 20

Statutes

18 U.S.C. § 875(c) ....................................................................3

18 U.S.C. § 3161(h)(1)(F) ............................................. 33, 34, 40

18 U.S.C. § 4241 .................................................. passim

18 U.S.C. § 4246 .................................................. passim

18 U.S.C. § 4247(b) ....................................................... 31, 32, 44

28 U.S.C. § 1291 ........................................................................2

Pub. L. 96-43, 93 Stat. 327, 328 (Aug. 2, 1979)............................ 34

Pub. L. 98-473, Title II, § 403(a), 98 Stat. 1837, 2057-68 (Oct. 12, 1984)....... 30

Rules

Federal Rule of Civil Procedure 60(b)(6) .............................. passim

Other Authorities

S. Rep. No. 98-225 ................................................................. 36

A. Scalia & B. Garner*, Reading Law: The Interpretation of
  Legal Texts (2012)* .............................................................. 34

# **INTRODUCTION**

This appeal returns to the Fourth Circuit after a complicated procedural history. Theodore Carrington is currently detained—and has been for five-plus years—due to a now-dismissed threats charge and a subsequent order of civil commitment. In a prior appeal, this Court affirmed the civil-commitment order while leaving the door open for a future challenge to Carrington's continued detention through a Rule 60(b) motion. *See United States v. Carrington*, 2024 WL 243317, *4 n.3 (4th Cir. 2024); *id.* at *4 (Heytens, J., concurring) (noting that the Court "need not decide now" whether "obvious questions" about the performance of Carrington's counsel "would warrant reopening the civil court's judgment under Federal Rule of Civil Procedure 60(b)(6)").

The district court ultimately denied Carrington's post-appeal Rule 60(b) motion, but its reasons for doing so are legally erroneous. Relief is warranted under Rule 60(b) because Carrington's civil-commitment counsel provided ineffective assistance by failing to file a potentially dispositive timeliness motion—an irrational decision for which there was no conceivable strategic purpose. Further, if this Court agrees with Carrington on the merits of his timeliness claim, then he can establish severe prejudice in the form of four years (and counting) of unlawful civil commitment. These extreme and unusual circumstances warrant Rule 60(b) relief.

1

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of North Carolina had jurisdiction over this civil commitment under 18 U.S.C. § 4246. The district court entered an order denying Carrington's Rule 60(b) motion on June 2, 2025. JA103-117. Carrington filed a timely notice of appeal. JA118. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Did the district court abuse its discretion when it denied Rule 60(b)(6) relief based on a faulty legal premise—i.e., the court's belief that a dispositive timeliness claim, which Carrington's lawyer failed to raise, would not have succeeded on the merits?

## STATEMENT OF THE CASE

This Court issued two simultaneous opinions in January 2024 that disposed of Carrington's earlier appeals. *See United States v. Carrington*, 2024 WL 243317 (4th Cir. 2024) (appeal from civil-commitment order in the Eastern District of North Carolina); *United States v. Carrington*, 91 F.4th 252 (4th Cir. 2024) (appeal from dismissal of criminal indictment in the Middle District of North Carolina). In those opinions, this Court sets forth in detail the procedural history of Carrington's case, along with the interplay between the competency statute (18 U.S.C. § 4241) and the civil-commitment statute (18

2

U.S.C. § 4246). The factual statement below recaps the key facts, including the post-appeal developments in the district court.

## I. Initial Charges and Determination of Incompetency

The federal government charged Carrington, first by complaint and later by indictment, with a single count of communicating a threat in violation of 18 U.S.C. § 875(c). The charge was filed in the Middle District of North Carolina based on a threat to kill Senator Ron Johnson, which was sent to the Senator's whistleblower email address. JA11-18, JA20-21.

Shortly after an initial hearing in the case, the district court ordered a competency evaluation under 18 U.S.C. § 4241. The court's order was entered on February 2, 2021, and Carrington's evaluation at FCI Butner began on February 23, 2021. JA128, JA132. A forensic psychologist opined that Carrington was suffering from delusional disorder, and the court subsequently determined that Carrington was not competent to stand trial. JA155-160.

The court entered its competency order on August 23, 2021. JA155. As part of the order, the court directed that Carrington be temporarily committed under 18 U.S.C. § 4241(d) for treatment to determine whether his competency could be restored. JA158-159.

## II. Restoration Proceedings: Carrington's criminal-defense lawyer preserves a timeliness objection to be pursued in the parallel civil-commitment proceeding.

The court's commitment order—dated August 23, 2021—is the starting point for the facts most relevant to this appeal. It directed that "[t]he Attorney General shall hospitalize and transport the Defendant for treatment to a suitable BOP medical facility for (1) *a reasonable period of time, not to exceed four months*, for a psychiatric or psychological examination . . . to determine whether there is a substantial probability that" Carrington's competency could be restored "in the foreseeable future." JA158 (emphasis added). The order also permitted treatment "for an additional reasonable time," but only if the court were to issue an additional order finding "a substantial probability" that Carrington would regain competency within "such additional period of time." JA159.

The time periods in the order reflect the statutory limits. The first period ("not to exceed four months") is based on § 4241(d)(1), which authorizes commitment "for such a reasonable period of time, not to exceed four months, as is necessary to determine" whether a defendant's competency is likely to be restored. 18 U.S.C. § 4241(d)(1). The second period ("an additional reasonable time") is based on § 4241(d)(2), which allows the *court*—not the government—to extend the four-month period "for an additional reasonable period of time"

4

based on a specific finding that there exists "a substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A).

When the four-month mark approached, Carrington filed a pro se motion from a local detention center seeking enforcement of that deadline. JA22-23. Per his calculations, the time period was set to "expire[ ] on 12/20/21." JA22. He thus demanded "an immediate trial" or, alternatively, "an immediate dismissal and release." JA22.

A month later—and five months after the district court's order—the government finally decided to transfer Carrington from the local detention center to undergo evaluation at FMC Butner. JA162. In a report later filed in the district court, a BOP psychologist (Dr. Allyson Sharf) reported that Carrington was admitted into the Butner facility "on 1/18/22 and that his evaluation period was calculated to end on 5/15/22." JA162. Dr. Sharf opined that Carrington was incompetent to stand trial and that "there is not a substantial likelihood that Mr. Carrington will improve to such an extent that his competency to proceed may be restored." JA178. The report containing this opinion was signed on May 12, 2022, and it was filed in the district court on May 20, 2022. JA178.

A few weeks later, on June 10, 2022, the government filed a motion seeking a hearing on Carrington's competency and restoration in light of Dr. Sharf's report. In the motion, the government informed the district court that "a civil action has been instituted in the Eastern District of North Carolina for involuntary civil commitment." JA183.

The district court—in the Middle District of North Carolina—held a hearing, at which it heard testimony from Dr. Sharf. During the hearing, Carrington's counsel sought to "put on the record an issue related to the periods of time for which he's under evaluation in order to preserve the issue." JA206-207. More specifically, after citing this Court's decision in *United States v. Curbow*, 16 F.4th 92 (4th Cir. 2021), counsel preserved the following objection:

> The Defendant does not waive and objects to the period between August 23, 2021, which would be the Court's order at D-35 transporting him for evaluation, and the end period of that report of May 15, 2022, for the purpose of review of the attorney general's subject matter jurisdiction and on the issue of unreasonable delay.

JA207. Counsel further noted that she was preserving the issue "[i]n the event this moves forward with the civil process." JA207. Consistent with counsel's objection, Carrington also made a statement requesting release based on the delay: "Sir, with all due respect, it doesn't matter whether [the delays were]

intentional or not. My rights to due process were violated, and I demand to be released." JA219.

At the conclusion of the hearing, the judge requested written briefing on the delay issue. JA220-221. In response, Carrington's counsel submitted a written objection, arguing that "the statutory prerequisites to certification under 18 U.S.C. § 4246(a) were not met and Carrington hereby notices his objection to the time periods in the trial court." JA224-225. Counsel noted that the objection was being made "for further motion in the civil cause in the EDNC, to wit: certificate should be dismissed." JA225. Counsel acknowledged that the Middle District lacks "jurisdiction over the Certificate," but reiterated that she was giving notice "that Carrington objects to, and does not waive, the time periods in this Court (hereinafter 'MDNC') to which he complains, pursuant to the opinion of the Fourth Circuit in *United States v. Curbow*." JA225; *see also* JA230 (repeating that the objection was being noticed "for the purpose of a further motion to dismiss the certificate filed in the cause (in the EDNC)").

The Middle District then issued two final orders in the case. First, the court found, consistent with Dr. Sharf's opinion, that Carrington was incompetent to stand trial and that there was no substantial probability of his competency being restored. JA239. Second, the court granted the

7

government's subsequent motion to dismiss the indictment against Carrington without prejudice. JA247-248.

### III. Civil-Commitment Proceeding: Carrington's civil-commitment lawyer fails to raise the dispositive timeliness objection.

While the restorability proceeding detailed above were ongoing in the Middle District, the government initiated a civil-commitment proceeding in the Eastern District of North Carolina. It did so by filing a "Certificate of Mental Disease or Defect and Dangerousness" on May 26, 2022. JA38. The district court granted the government's request to stay action on the commitment pending a decision from the Middle District on the issue of restoration. JA48.[1]

As noted above, Carrington and his Middle District lawyer preserved an objection to the delay in his restoration period under § 4241(d), noting that the delay would be the basis for a motion to dismiss the certificate filed in the Eastern District. JA207, JA219, JA224-231. However, the lawyer appointed to represent Carrington in the Eastern District did not file such a motion to

---

[1] The order granting this stay was dated May 27, 2022, but filed on June 29, 2022. JA48. Carrington has sought to advance an argument that the circumstances underlying this discrepancy constitute fraud or prosecutorial misconduct warranting relief under Rule 60(b). *See* Pro Se Motion (Dkt. 86), *United States v. Carrington*, 5:22-hc-2093 (E.D. N.C. Feb. 10, 2025). Because the district court did not address this argument on the merits, *see* Order (Dkt. 89), Carrington remains free to pursue it in the first instance in the district court, either via a habeas petition or a subsequent Rule 60(b) motion.

dismiss and did not otherwise address the delays in the § 4241(d) period at any point during the civil-commitment proceeding.

In March 2023, Dr. Sharf filed a new report concluding that Carrington met the criteria for commitment under § 4246. JA250-270. The Eastern District then held a civil-commitment hearing, at which Dr. Sharf testified. JA271-303. After the hearing, an Eastern District judge issued an order finding that Carrington was subject to commitment under § 4246. JA59-61.

## IV. Initial Appeal(s): This Court declines to address the timeliness issue because it had not been raised in Carrington's civil-commitment proceeding.

Following his commitment, Carrington pursued appeals in this Court arising from both the criminal case in the Middle District and the civil-commitment proceeding in the Eastern District. He advanced the same core theory in each appeal, arguing that he was entitled to release due to an unreasonable delay in his § 4241(d) custody period.

That argument flowed from this Court's prior decisions in *Curbow* and *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020). As the Court explained, the government may only obtain a civil-commitment order if it can establish that the to-be-committed individual is "someone (1) who is 'in the custody of the Bureau of Prisons whose sentence is about to expire,' (2) who 'has been committed to the custody of the Attorney General pursuant to section

9

4241(d),' or (3) 'against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person.'" *Carrington*, 91 F.4th at 258 (quoting § 4246(a)). Under *Wayda* and *Curbow*, "the subject of a civil-commitment certificate may challenge the certificate in the civil-commitment court on the grounds that he didn't fit within one of these three categories at the time the certificate was filed." *Id.* And "[i]f he's right, then the certificate must be dismissed for failing to satisfy the necessary elements of a § 4246 civil-commitment claim." *Id.* (citing *Curbow*, 16 F.4th at 116).[2]

This case turns solely on the second category, which covers an offender "committed to the custody of the Attorney General pursuant to section 4241(d)." In *Wayda*, this Court held that the second category applies only if the person is "*legally* committed to the Attorney General's custody." *Wayda*, 966 F.3d at 305 (emphasis added). And the court further held that "the government lacks authority to confine a defendant beyond the specific period provided by the statute [§ 4241(d)]." *Id.* (noting that this conclusion is "supported by the

---

[2] The third category is likely unconstitutional under *United States v. Comstock*, 560 U.S. 126 (2010), "because the federal government lacks the power to civilly commit individuals who are no longer in its custody." *See United States v. Berry*, 142 F.4th 184, 190 (4th Cir. 2025). This Court in *Berry* noted the potential constitutional infirmity but ultimately decided the case on other grounds. *Id.* The constitutional issue is not presented here because the government did not rely on the third category in civilly committing Carrington.

concurring conclusions of our sister circuits"). Thus, to comply with the second category, the government must file the certificate "during the Attorney General's time-limited custody." *Id.* When the government fails to do so, the certificate is "untimely" and, therefore, subject to dismissal. *Id.* at 309.

Carrington sought vacatur of his civil-commitment order based on *Wayda*. He contended that "the government's legal custody over him terminated on December 23, 2021," four months after the district court's August 23, 2021, order committing him for the four-month restoration period specified in § 4241(d). *See Carrington*, 2024 WL 243317, *2. Because the government did not file the certificate until May 2022, "nine months after he entered the Attorney General's custody," Carrington argued that the delay was unreasonable under *Wayda*, "where [this Court] held that a six-month period of custody was unreasonable." *Id.* The government, by contrast, argued that the delay was not unreasonable because, in its view, "the four-month period enumerated in § 4241(d)(1) begins when a defendant is hospitalized," which did not occur in Carrington's case until January 18, 2022, "a total of four months and eight days" before the government filed the certificate. *Id.*

This Court rejected Carrington's argument, but it did so for procedural reasons without addressing the merits. In the criminal appeal, the Court held that it lacked jurisdiction to review the Middle District's order dismissing

11

Carrington's indictment without prejudice. 91 F.4th at 264. That order, the court reasoned, was neither a final judgment nor one subject to review under the collateral order doctrine. *Id.* at 264-70. As a result, the court dismissed Carrington's appeal in the criminal case. *Id.* at 270.

In the civil appeal, the Court concluded that Carrington had "forfeited" review of the timeliness issue. 2024 WL 243317, *1. Although the lawyer in Carrington's criminal case had expressly preserved that issue, the separate lawyer in his civil-commitment case did not advance that argument as a basis to challenge his commitment. As a result, this Court affirmed under the plain-error standard of review. *Id.* at * 3 ("For even if there is an error below, that error is not plain."). In doing so, the Court expressly reserved any decision on the merits of the timeliness issue. *Id.* at *3 n.2 ("None of this is to decide this difficult question today.").

Judge Heytens wrote a concurring opinion in which he reiterated the majority's reservation of the merits issue. *Id.* at *4 ("neither of our decisions rejects Carrington's arguments about unreasonable delay on the merits"). He further highlighted that "neither decision prevents Carrington from seeking relief based on his lawyers' failure to raise the delay issue in the civil case." *Id.* Elaborating on this point, Judge Heytens noted that "a reasonable lawyer" could have understood this Court's prior precedent to require that the delay

issue be raised either (a) in the criminal case or (b) in the civil case. *Id.* But, as

Judge Heytens observed, Carrington's counsel did neither:

> What I cannot fathom is why one would follow the course Carrington's lawyers did here. In the criminal court, counsel preserved an objection to the delays in Carrington's custody without asking for any remedy, stating instead that they were doing so "for the purpose of [a] further motion properly filed in the ... civil proceedings." But then, in the civil proceeding, Carrington's (different) lawyers never raised the delay issue at all, much less argued that those delays made him ineligible for civil commitment. And that failure, in turn, led directly to both the district court and this one not considering the merits of any delay claim.

*Id.* (internal citations omitted). Summing up, Judge Heytens stated that "[t]his

series of events raises obvious questions about the quality of representation

Carrington received before the district court." *Id.* But, he noted, the Court

"need not decide now" whether this deficiency "would warrant reopening the

civil court's judgment under Federal Rule of Civil Procedure 60(b)(6) or

support a habeas petition." *Id.*

## V. Rule 60(b) Proceedings

Back in the Eastern District after appeal, Carrington filed a motion

under Rule 60(b)(6) seeking relief from his ongoing civil commitment. *See*

JA63. He argued that his prior counsel provided ineffective assistance by

failing to properly raise the timeliness issue under *Wayda* and that, if the issue

had been raised, he would not have been subject to civil commitment. JA63-75

(motion), JA95-101 (reply).

13

The district court denied relief, relying on three separate but related rationales. The court first considered the "deficient performance" component of an ineffective-assistance claim. JA108-113. It noted that Carrington's timeliness argument under *Wayda* had a "potential weakness" because some courts have adopted the government's position that § 4241(d)'s four-month period begins at hospitalization rather than commitment. JA112. According to the court, "rationale [sic] counsel could have concluded that this was the likely interpretation to be reached by the district court and the Fourth Circuit" and that, under this interpretation, the "delay was highly unlikely to be considered unreasonable." JA112. In any event, the court reasoned that the lack of clarity meant that counsel's performance could not be deficient: "The fact that the Fourth Circuit has not yet resolved the timing issue demonstrates that it was not grossly incompetent for Respondent's counsel to lack confidence in the merits of a *Wayda* argument and thus choose not to make one." JA112-113. The court concluded that this lack of confidence (or "uncertainty") about the merits of a potential claim was enough to immunize counsel's performance from any claim of deficiency under *Strickland*. JA112 ("Being uncertain in the face of uncertainty, however, does not amount to a violation of the Sixth Amendment.").

Second, the court found a lack of prejudice under the *Strickland* standard, concluding that Carrington had not "shown a 'reasonable probability' that but for his counsel's failure to object, his certificate would have been dismissed." JA113. In doing so, the court relied again on the "likelihood" of the government's interpretation of § 4241(d) being adopted, noting that "the certificate was filed only eight days after the expiration of the four-month hospitalization period" under that interpretation. JA113. The court also noted that *Wayda* and *Curbow* were distinguishable because the government "filed the certificate before the district court had made a final restorability determination." JA114. Based on these factors, the court held that "the eight-day period was likely reasonable under § 4241(d)(2)(B)." JA114.

Third, the court stated that "relief under Rule 60(b)(6) would be inappropriate" even if Carrington "had made a stronger case for ineffective assistance." JA114. In support the court reiterated its belief that Carrington's timeliness claim "was unlikely to be successful." JA115. The court also stated that its prior decision to commit Carrington under the § 4246 standard meant that "it would neither be in Respondent's best interest nor the communities to vacate his commitment order and release him from custody without the benefit of government-supervised treatment." JA116.

Carrington has been unlawfully confined for four years (and counting) based on a civil-commitment order that his own lawyer failed to challenge—despite having a dispositive, potentially meritorious timeliness argument ready and waiting. The circumstances of this case warrant relief under Rule 60(b), and the district court's order denying such relief is tainted by an erroneous legal premise: The court believed that the dispositive legal argument, forfeited by counsel, would have failed on the merits.

**Carrington's timeliness claim had merit.** Under this Court's precedent, Carrington was subject to civil commitment only if he remained in the government's legal custody when the government filed its civil-commitment certificate in May 2022. *See Carrington*, 91 F.4th at 258; *Wayda*, 966 F.3d at 305-09. Because the government's delay in filing the certificate was unreasonable, Carrington was no longer in legal custody in May 2022. The governing statute, 18 U.S.C. § 4241(d), provides a four-month limit on commitment for restoration, and that period began here when the district court committed Carrington on August 23, 2021—not, as the government contends, when it finally decided to hospitalize him months later in January 2022.

The plain text compels this conclusion. Section 4241(d) directs the court to "commit" the defendant and then, immediately thereafter, directs the

Attorney General to "hospitalize" him for no more than four months. Nothing in the statute creates an open-ended pre-hospitalization waiting period. In fact, a related provision in the Speedy Trial Act expressly accounts for transportation delays and caps them at 10 days. Congress's choice not to build a similar exclusion into § 4241(d) confirms that the four-month period is inclusive of pre-hospitalization delay.

The relevant context and the constitutional-doubt canon confirm this reading. The statutory framework for civil commitment imposes tight deadlines at every stage to ensure expeditious resolution of competency proceedings, and the government's interpretation would blow a hole through that framework. Moreover, the framework was adopted to eliminate constitutional violations under *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), which holds that unreasonable delays in civil-commitment proceedings violate due process. Yet, under the government's alternative interpretation, the statute would authorize this same kind of unconstitutional delay; the constitutional-doubt canon thus counsels in favor of Carrington's interpretation.

Alternatively, even under the government's preferred interpretation, Carrington's claim remains meritorious. Multiple courts have held that a pre-hospitalization delay cannot exceed the four-month maximum for

hospitalization itself. Thus, the five-month delay here was unreasonable under any interpretation of the statute.

**Counsel performed deficiently by failing to pursue the timeliness claim.** When analyzing counsel's failure to pursue the timeliness claim, the district court applied the wrong legal standard. It believed that "uncertainty" or a lack of "confidence" about the motion's merit was enough to defeat any claim that counsel performed deficiently by failing to pursue the claim. JA112-113. But that standard flatly contradicts this Court's precedent, which requires counsel to pursue motions or arguments with "some substance" unless there are "reasonable strategic reasons" for declining to do so. *United States v. McNeil*, 126 F.4th 935, 943 (4th Cir. 2025)

No one has seriously argued that such a strategic rationale exists. Carrington's criminal lawyer in the Middle District had preserved the timeliness objection for the express purpose of advancing it in the civil-commitment proceeding. And the claim was dispositive: Success would have required dismissal of the commitment certificate and Carrington's release. At most, the district court seemed to suggest, in a footnote, that counsel may have thought it in Carrington's best interest to acquiesce in commitment. JA113. But counsel was not empowered to make that choice. Decisions about "the objective of the defense" are reserved for the client, *McCoy v. Louisiana*, 584

U.S. 414 (2018), and the record makes unmistakably clear that Carrington's objective has been to oppose commitment at every turn.

**Relief is warranted under Rule 60(b)(6).** This case presents the kind of exceptional circumstances that Rule 60(b)(6) exists to address. Carrington's lawyer inexplicably abandoned a preserved, dispositive argument, leaving him to endure four-plus years of unlawful confinement. The government suffers no prejudice from reopening the judgment: It retains a full opportunity to litigate the timeliness issue, just as it would have if Carrington's counsel had appropriately raised it. Because the district court's Rule 60(b) denial rested on its erroneous conclusion that the timeliness claim would fail, this Court should vacate the order and remand.

### STANDARD OF REVIEW

This Court reviews a district court's ruling on a Rule 60(b) motion under the abuse-of-discretion standard. *Allen v. Stein*, 165 F.4th 272, 286 (4th Cir. 2026). It has recognized, in this context, that "a district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *Id.* (quoting *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022)). The Court also "has made clear that 'an error of law is by definition an abuse of discretion, and such an error is alone grounds for

19

reversal.'" *Id.* (quoting *Wudi Industrial (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 190 (2023)).

## **ARGUMENT**

**The district court abused its discretion when it denied Rule 60(b) relief in the face of prior counsel's failure to raise a meritorious timeliness objection to Carrington's civil commitment.**

The district court erred by denying Carrington's Rule 60(b) motion. Contrary to the district court's suggestion, an attorney does not perform reasonably when he or she fails to pursue a dispositive legal claim simply because the claim's success is not guaranteed. If such a claim has some potential merit, an attorney must have a strategic reason to not pursue it. No such strategic reason exists here, and indeed no one has seriously suggested that it does.

The bottom line is simple: Pursuing a dispositive motion even in the face of "uncertain" odds should have been a no-brainer decision for Carrington's counsel. The only other possible outcome was indefinite civil commitment, and the record leaves no doubt that Carrington's strategic objective was to avoid that outcome.

The argument section proceeds as follows. We begin in Section I with the merits of the timeliness objection. Starting there makes sense because the answer will determine whether the ineffectiveness of Carrington's counsel

caused prejudice. In similar cases, the Court has routinely begun with the merits of a forfeited argument before analyzing whether counsel might have had strategic reasons to forego the argument. *See United States v. McNeil*, 126 F.4th 935, 943 (4th Cir. 2025) (addressing merits first because, if the district court were correct that defendant's argument was "frivolous," it would "obviat[e] the need for an inquiry into [counsel's] possible strategic reasons for failing to file"); *United States v. Slocum*, 106 F.4th 308, 311 (4th Cir. 2024) ("we consider whether Slocum has stated a meritorious double jeopardy challenge before turning to the merits of his ineffective assistance claim").

Then, in Section II, we address counsel's deficient performance in failing to raise the timeliness claim in the commitment proceeding. Finally, in Section III, we refute the district court's alternative suggestion that an ineffective-assistance showing would not have warranted relief under Rule 60(b)(6).

**I. Carrington's timeliness claim is correct on the merits: The delay in his pre-certification custody was unreasonable, rendering him ineligible for commitment under this Court's precedent.**

Three well-established legal principles form the basis for Carrington's timeliness claim.

First, legal custody is one of the necessary elements for the government to seek civil commitment under § 4246. The statute permits commitment only if a person is "someone (1) who is 'in the custody of the Bureau of Prisons

21

whose sentence is about to expire,' (2) who 'has been committed to the custody of the Attorney General pursuant to section 4241(d),' or (3) 'against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person.'" *Carrington*, 91 F.4th at 258 (quoting § 4246(a)).[3]

Second, the category of persons covered by § 4246(a)(2)—those in "custody . . . pursuant to section 4241(d)"—does not cover just anyone who happens to be in physical custody. It is limited to people who are "*legally* committed to the Attorney General's custody." *Wayda*, 966 F.3d at 305 (emphasis added). The Attorney General's authority to detain individuals under § 4241(d) comes with strict statutory time limits, and this Court held in *Wayda* that "the government lacks authority to confine a defendant beyond the specific period provided by the statute [§ 4241(d)]." *Id.* Thus, a defendant is subject to civil commitment under this category only if the government files the certificate "during the Attorney General's time-limited custody." *Id.*

Third, a defendant may (in some circumstances) challenge the filing of a civil-commitment certificate based on delays in the § 4241(d) custody period that render his custody no longer legal. Specifically, while some types of § 4241(d) delay must be raised in the criminal court, this Court "permit[s]

---

[3] As noted above, the dismissed charges category—which is not at issue here— is likely unconstitutional under *Comstock*. *See supra* n.2.

litigants to challenge the period of custody immediately preceding the filing of the certificate" in the civil-commitment court. *Carrington*, 91 F.4th at 261 n.4.[4] As this Court recognized in Carrington's first appeal, that is the type of challenge he brings. *Id.*[5] Thus, if he is correct on the merits, the untimely-filed certificate in his case is subject to dismissal. *Id.* at 258 ("If he's right, then the certificate must be dismissed for failing to satisfy the necessary elements of a § 4246 civil-commitment claim.") (citing *Curbow*, 16 F.4th at 116).

With these background principles undisputed, we turn to the substantive question at the heart of this appeal—whether the pre-certification delay in Carrington's case was unreasonable. The answer will be relevant to, and perhaps even dispositive of, the other issues presented by the appeal. *See* JA109-116 (district court's decision discussing its views of reasonableness and

---

[4] *See also id.* at 262 ("If a person is no longer in the Attorney General's legitimate custody by the time the government files the civil-commitment certificate, then he can raise the delay in the *civil* court via a motion to dismiss the certificate") (emphasis in original); *id.* at 261 n.4 ("both *Wayda* and *Curbow did consider* the reasonableness of delays in the custody period immediately preceding the filing of the §§ 4246 and 4248 certificates") (emphasis in original).

[5] *See also Carrington*, 2024 WL 243317, *3 (noting that "Carrington's theory" in the civil-commitment appeal, which relied on objections in the *criminal* case, "misunderstands our holding in *Curbow*," under which "challenges to the period immediately preceding the filing of the § 4246 certificate can and must be raised in the civil-commitment court").

then relying on those views in evaluating arguments regarding ineffective assistance and Rule 60(b)).

### A. The § 4241(d) custody period began with the Middle District's commitment order on August 23, 2021.

The timeliness analysis begins with a question of statutory interpretation. The facts are undisputed that (1) the district court issued an order on August 23, 2021, committing Carrington for treatment in the Attorney General's custody for "a reasonable period of time, not to exceed four months," JA155-160; and (2) that, on May 26, 2022, nine months later, the government filed its § 4246 certificate. JA38-41. As noted in Carrington's first appeal, the government contends that this nine-month period is not the relevant period under § 4241(d). In its view, "the four-month period enumerated in § 4241(d) begins when a defendant is hospitalized, not when he is committed to the Attorney General's custody." *Carrington*, 2024 WL 243317, *2. The district court's denial of Carrington's Rule 60(b) motion was premised on its belief that this interpretation was "likely" correct based on out-of-circuit decisions adopting a similar interpretation. JA112.

This Court should reject the government's interpretation. The plain text of § 4241(d), the broader statutory context, and the constitutional-avoidance canon all point in the same direction: The four-month statutory time limit must

run from the commitment order; the government cannot thwart it by delaying the defendant's admission to a medical center for evaluation.

### 1. The plain statutory text supports Carrington's interpretation of § 4241(d).

Statutory interpretation must begin with the text of the relevant statute, which is set forth here:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> **(1)** for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> **(2)** for an additional reasonable period of time until—
>
> > **(A)** his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
> >
> > **(B)** the pending charges against him are disposed of according to law;
>
> whichever is earlier.

18 U.S.C. § 4241(d).

The government builds its argument on a single snippet of this text. It argues, in a nutshell, that the four-month clock must start at hospitalization, not commitment, because the verb "hospitalize" appears just before the four-month limitation. *See* Gov't Response Brief, *United States v. Carrington*, No. 23-6348, at 16-17 (4th Cir. July 28, 2023). If we were permitted to view that statutory snippet in isolation, the government's reading might be plausible, as this Court itself observed in Carrington's first appeal. *See Carrington*, 2024 WL 243317, *3 ("the text of the statute can be reasonably read to tie this time limit to the start of hospitalization"). This observation was enough to dispose of Carrington's earlier appeal because the Court was reviewing the issue under the plain-error standard. *Id.* ("We do not, and need not, resolve this thorny issue today.").

However, the government's argument must ultimately fail on the merits because statutory "language is not read in isolation, rather it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Wayda*, 966 F.3d at 303 (citation and internal quotation marks omitted). The "hospitalize" sentence—which directs the Attorney General to hospitalize an incompetent defendant for restoration treatment—cannot be separated from

the preceding sentence, which directs the district court to "commit" an incompetent defendant "to the custody of the Attorney General." 18 U.S.C. § 4241(d). Read together, these sentences show that the sole purpose of a § 4241(d) commitment is to provide treatment, for a specified time period, to determine whether a defendant's competence can be restored. Contrary to the government's suggestion, the statute does not permit the district court to "commit" a defendant "to the custody of the Attorney General" for an indefinite period of time that ends only when the Attorney General decides to send the defendant to a hospital.

This ordinary meaning is well illustrated by a non-legal example. Imagine you ask your mother for help watching your young children so you can travel to Richmond for oral argument, and she responds, "I'll keep the kids for you. They can stay at my house for no more than three days." This response indicates that grandma will keep the kids at her house for three days. It does not indicate that the kids will stay at her house for three days and be kept somewhere else under her watch for an unspecified number of additional days. This meaning is clear even though the time limit ("no more than three days") appears after the specific phrase, "stay at my house." The two sentences, read together, show that the kids will be committed to her care for a maximum of three days, during which time they will stay at her house.

The same rationale applies to § 4241(d). In ordinary parlance, the language conveys that the defendant will be committed to the Attorney General's custody for a maximum of four months, during which time the defendant will be hospitalized for treatment.

Both Judge Friedrich and Judge Watford have adopted this straightforward reading of the statutory text. *See United States v. Carter*, 583 F. Supp. 3d 94 (D. D.C. 2022); *United States v. Donnelly*, 41 F.4th 1102, 1108 (9th Cir. 2022) (Watford, J., concurring in the judgment). In *Carter*, Judge Friedrich rejected the government's hospitalization-only interpretation, reasoning that "the plain text of § 4241(d)(1) provides that the government 'shall hospitalize' an incompetent defendant as soon as the government obtains 'custody' over him." *Carter*, 583 F. Supp. 3d at 100. Thus, she concluded that, "to the degree that § 4241(d) allows the government to delay defendants' transportation, those delays must be part of the 'reasonable period of time, not to exceed four months,'" specified in the statute. *Id.*

Likewise, in *Donnelly*, Judge Watford emphasized that the statute sets forth the "shall commit" and "shall hospitalize" directives "[i]n the same breath." 41 F.4th at 1108. As a result, "[t]he provision is most sensibly read as imposing an outside time limit on the entire period of commitment, from issuance of the court's commitment order to completion of the defendant's

28

period of hospitalization." *Id.* The government's alternative interpretation, as Judge Watford highlighted, lacks any textual support: "Nothing in the text of § 4241(d) suggests that Congress envisioned the creation of two separate time periods, the first a period of pre-hospitalization commitment subject to no statutory time constrains whatsoever, to be followed by a period of hospitalization subject to a strict four-month time constraint." *Id.*

This interpretation is also consistent with *Wayda*, where this Court concluded that "our precedent directs us to strictly construe the window of time in which the government is expected to file a timely § 4248 certification." 966 F.3d at 308. As the Court later recognized, the "circumstance" relevant here—commitment pursuant to § 4241(d)—"is set forth in exactly the same language in §§ 4246(a) and 4248(a)." *Curbow*, 16 F.4th at 97.

The government's interpretation cannot be reconciled with *Wayda*'s "strictly construe" directive. It would create a time period—between a commitment order and the government's decision to hospitalize—that is subject to no statutory time constraints, thus allowing the potential for indefinite pre-certification delay.

In short, the plain-text interpretation of § 4241(d) is also the best one, as both Judge Friedrich and Judge Watford have recognized.

**2. The government's alternative interpretation cannot be squared with the broader statutory context.**

The broader statutory context further supports Carrington's plain-text interpretation. The surrounding provisions demonstrate a statutory directive for federal courts to expeditiously adjudicate competency issues. The government's alternative interpretation would defeat that purpose, allowing the same endless delays that prompted passage of § 4241 in the first place. *See Wayda*, 966 F.3d at 306-07 (observing that "[t]he reasonableness language in § 4241(d) merely codifies the requirement asserted in *Jackson v. Indiana*, that our constitutional principles impose a rule of reasonableness on federal civil commitment procedures") (cleaned up).[6]

The governing statutes establish a clear and coherent framework for federal courts to handle competency issues expeditiously. Under § 4241(a), the district court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." 18 U.S.C. § 4241(a). Before that hearing, the court may order "a psychiatric or psychological examination of the defendant." 18 U.S.C. § 4241(b). Such an examination must be completed within "a reasonable period, but not to exceed thirty days," unless the court

---

[6] Congress enacted § 4241 as part of the Insanity Defense Reform Act (IDRA), Pub. L. 98-473, Title II, § 403(a), 98 Stat. 1837, 2057-68 (Oct. 12, 1984).

grants the examiner "a reasonable extension, but not to exceed fifteen days." 18 U.S.C. § 4247(b). Then, if a defendant is deemed incompetent, the restoration provision at issue here—§ 4241(d)—comes into play, mandating treatment for "a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability" that he will regain competency. 18 U.S.C. § 4241(d)(1). The court may extend that four-month period to permit additional treatment for "an additional reasonable period of time," but only if the court finds "a substantial probability" of restoration. 18 U.S.C. § 4241(d)(2)(A).

The government's interpretation would undercut this comprehensive statutory timeline by creating an additional time period—between the finding of incompetency and the beginning of restoration treatment—that is not subject to any statutory time constraints.

Judge Friedrich relied on this statutory context when rejecting the government's alternative interpretation. She explained that the relevant statutory provisions "work together to require the timely resolution of cases like this one: Whereas the Speedy Trial Act requires the parties to work quickly before a finding of incompetence, IDRA requires the government to work quickly thereafter." *Carter*, 583 F. Supp. 3d at 101. The government's interpretation, she reasoned, "would create a substantial hole in this statutory

scheme" because incompetent defendants "would lack any statutory recourse against potentially indefinite delays in transporting them to a suitable facility." *Id.*

Judge Watford likewise found that the government's position cannot be reconciled with the statutory context. As he noted, the government justifies its position by saying it needs an unrestricted period between commitment and hospitalization to ensure "available bed space" in BOP facilities for treatment. *Donnelly*, 41 F.4th at 1108 (Watford, J., concurring in the judgment). But, as Judge Watford explains, "Congress anticipated this very problem when it enacted § 4241," and it responded by "authoriz[ing] the Attorney General to 'contract with a State, a political subdivision, a locality, or a private agency" to provide the necessary treatment. *Id.* at 1109 (quoting 18 U.S.C. § 4247(i)(A)). Because this provision permits ample alternatives to treatment within BOP, it undercuts the government's alternative interpretation of the statute: "This provision provides further confirmation, if any were needed, that Congress envisioned only a short gap between issuance of a commitment order under § 4241(d) and a defendant's hospitalization." *Id.*

Finally, the broader statutory context also supports Carrington's interpretation in one additional way. In a related statute, Congress chose to account specifically for the potential delay associated with identifying an

appropriate facility and transporting a defendant to it. In the Speedy Trial Act, Congress provided that the "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization" would be excluded from the 70-day speedy-trial clock. 18 U.S.C. § 3161(h)(1)(F). In doing so, however, Congress stated that "any time consumed in excess of ten days from the date [of] . . . an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." *Id.*

This provision shows that Congress knows well how to exclude transportation and facility-placement delays from statutory deadlines. Because Congress chose not to add such an exclusion to § 4241(d), we should presume that the statute's four-month period is inclusive of the time needed for transportation between the commitment order and the defendant's "arrival at the destination." *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

This presumption makes good sense given the inter-relationship of the provisions. When Congress passed the IDRA in 1984, including § 4241(d)'s four-month limit, it did so against the backdrop of the already-existing

33

§ 3161(h)(1)(F) in the Speedy Trial Act. Congress had added that provision in 1979,[7] and the two statutes address the same topic: the timely processing of criminal cases involving mentally incompetent defendants. As the *Reading Law* treatise explains, "laws dealing with the same subject—being *in pari materia* (translated as 'in a like matter')—should if possible be interpreted harmoniously." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012); *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006) ("under the *in pari materia* canon, statutes addressing the same subject matter generally should be read 'as if they were one law'") (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)); *Erlenbaugh*, 409 U.S. at 244 (describing the "rule of *in pari materia*" as "a logical extension of the principle that individual sections of a single statute should be construed together").

The government's interpretation of § 4241(d) creates an exception to statutory time limits that swallows them whole. It would allow an indefinite delay between a judge's commitment order and the defendant's hospitalization, under the rationale that such a delay is warranted by the government's need for time to identify an appropriate facility and transport a defendant to it. But Congress has already said, in a related context, that such

---

[7] *See* Speedy Trial Act Amendments Act of 1979, Pub. L. 96-43, 93 Stat. 327, 328 (Aug. 2, 1979).

facility-placement and transportation should require no more than 10 days. Congress's choice of a four-month period in § 4241(d) is best read as including the minimal amount of time that Congress deemed necessary for transportation.

**3. The constitutional-doubt canon also precludes the government's interpretation.**

To the extent any ambiguity remains about § 4241(d)'s meaning, the constitutional-doubt canon should resolve it in favor of Carrington's interpretation. It is well established that Congress passed § 4241(d) in response to the Supreme Court's holding in *Jackson* that unreasonable delays in the civil-commitment process violate the due process clause. *See, e.g.*, *Wayda*, 966 F.3d at 306-07; *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) ("Congress enacted § 4241(d) in response to the Supreme Court's decision in *Jackson v. Indiana*"). Properly interpreted, the time periods in § 4241(d) ensure compliance with *Jackson*'s due process holding by forcing commitment proceedings to move expeditiously, without unjustified delays.

As Judge Watford explained in *Donnelly*, the legislative history confirms this understanding. *Donnelly*, 41 F.4th at 1108-09 (Watford, J., concurring in the judgment). That history "makes no mention of two separate time periods," one for pre-hospitalization commitment and a second for hospitalization. *Id.* at

1108. Instead, it "describes a single period of 'commitment under section 4241' that 'may not exceed four months.'" *Id.* (quoting S. Rep. No. 98-225, at 236 (1983)). And it specifically states that the § 4241(d) time periods are designed to "accord with the Supreme Court's holding in *Jackson v. Indiana.*" S. Rep. No. 98-225, at 236 (1983).

By adding an indefinite period of pre-hospitalization commitment, the government's interpretation invites the same problem of endless delay prohibited by *Jackson*. Thus, even if that interpretation were plausible on its face, this Court should reject it under the canon of constitutional doubt. That canon instructs, "when deciding which of two plausible statutory constructions to adopt," one of which "would raise a multitude of constitutional problems," a court must adopt the construction that avoids the constitutional issues. *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005). Thus, the canon serves as "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Id.* at 381. Importantly, the canon does not require a finding that the alternative interpretation would be unconstitutional; it applies anytime the interpretation would create "serious constitutional doubts." *Id.*; *see also* Reading Law, at 247-48 (stating that the canon "militates against not only those interpretations that would render the

statute unconstitutional but also those that would even raise serious questions of unconstitutionality").

### 4. The non-binding authority cited by the district court is not persuasive.

The district court cited five non-binding cases to support its view that the government's interpretation of § 4241(d) would likely prevail, thus causing Carrington's timeliness claim to fail on the merits. *See* JA111-112. This Court should reject the analysis in those cases.

The cited decisions fall into three categories. First, *United States v. Magassouba*, 544 F.3d 387 (2d Cir. 2008), is unhelpful because it does not address the relevant statutory question about when § 4241(d)'s four-month period begins. 544 F.3d at 413 n.19 ("Nor do we here address whether the time a defendant . . . spends in marshals' custody being transported to or from a prison hospital facility must be counted within the four-month term of § 4241(d)(1) custodial hospitalization.").

The second category of cases includes *United States v. Alhindi*, 97 F.4th 814 (11th Cir. 2024), and *United States v. Rendon-Romero*, 738 F. Supp. 3d 697 (E.D. N.C. 2024). In each case, the court holds that § 4241(d)'s four-month period begins not at the time of commitment but instead whenever the government chooses to hospitalize the defendant. *Alhindi*, 97 F.4th at 824-26; *Rendon-Romero*, 738 F. Supp. 3d. at 702 (citing *Alhindi*). And, in each case, the

37

court commits the same error as the government has in this litigation by focusing on the "hospitalize" sentence in isolation without addressing the contextual factors that point toward a different interpretation.

Finally, the third category of cases includes *United States v. Donnelly*, 41 F.4th 1102, 1108 (9th Cir. 2022), and *United States v. Lara*, 671 F. Supp. 3d 1257 (D. N.M. 2023). Like *Alhindi* and *Rendon-Romero*, each case adopts the government's preferred statutory interpretation, holding that § 4241's four-month period begins upon hospitalization. *Donnelly*, 41 F.4th at 1105; *Lara*, 671 F. Supp. 3d at 1261. And, like *Alhindi* and *Rendon-Romero*, the statutory analysis in these cases is not persuasive because of a failure to engage fully with the statutory context.

But *Lara* and *Donnelly* have something more important in common: Even applying the government's preferred statutory interpretation, each case holds that the government's delay during the § 4241(d) period was unreasonable. *See Donnelly*, 41 F.4th at 1106; *Lara*, 671 F.Supp.3d at 1263-64.[8] The same

---

[8] The unreasonable-delay holdings in *Lara* and *Donnelly* render their discussions of the statutory-interpretation unnecessary, meaning those discussions are arguably dicta. *See United States v. McCarthy*, 703 F. Supp. 3d 1377, 1380 (M.D. Fla. 2023) (declining to resolve statutory issue based on finding that the delay was unreasonable even under the government's interpretation).

outcome is warranted in Carrington's case given that the delays are comparable to those in *Lara* and *Donnelly*. *See infra* Section I.C.

> **B.    The nine-month period between commitment and certification was unreasonable.**

Once the proper interpretation of the statute is settled, we can turn to the key question: whether the nine-month period between the commitment order and the government's filing of the § 4246 certificate was reasonable. If that delay was unreasonable, then Carrington was ineligible for certification.

Let's begin with the timeline. If Carrington's statutory interpretation is correct, the four-month period in § 4241(d) began running no later than August 23, 2021, the day the district court issued its commitment order. The period thus expired on December 23, 2022. The government did not file its § 4246 certificate until May 26, 2022—more than nine months after the commitment order issued and five months after the § 4241(d) custody period expired.

This delay—equivalent to more than twice the statutory time threshold—is not reasonable. In *Wayda*, this Court explained that "our precedent supports a relatively tight window for filing certifications." 966 F.3d at 307. And it emphasized that "[t]his principle should apply with equal -- if not greater -- force in the case of individuals, such as Appellee, who have not been convicted of a crime." *Id.* at 308. By definition, a period that more than doubles the statutory limit is not "relatively tight." As in *Wayda*, the question

of reasonableness in this case is not difficult after the statutory-interpretation question is resolved.

The unreasonableness of the delay here is highlighted by the Speedy Trial Act, where Congress expressly addressed the issue of pre-hospitalization delay. In doing so, Congress provided that "any time consumed in excess of ten days from the date an order of removal or an order directing such transportation [for 'examination or hospitalization'], and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F). This provision shows that, in Congress's view, the "reasonable" amount of time for the government to identify a suitable hospital and arrange transportation to it is no more than 10 days. The five-month period in this case is patently unreasonable.

Finally, as in *Wayda*, the unreasonableness is confirmed by the government's failure to explain the delay. This Court acknowledged in *Wayda* that the government could seek an extension of the four-month statutory limit as outlined in § 4241(d)(2)(B), but that any such extension "should only be so long as to allow for reasonable explainable administrative delays." *Wayda*, 966 F.3d at 308. The Court then noted that the government had "offered little by way of explanation" for the delay. *Id.* It then specifically rejected the government's argument that "some portion of the delay prior to the § 4248

40

certification could be attributed to Appellee's travel time to North Carolina", stating that "[n]othing in the record or arguments before us" could justify "the six month delay in this case." *Id.* at 309.

The same is true here. Although the district court's commitment order directed the Attorney General to "hospitalize and transport the Defendant for treatment" within the prescribed four-month period, *see* JA158, the record demonstrates that the government neither took any action, nor explained its failure to do so, before that four-month period expired. If there were "reasonable explainable administrative delays" that required an extension of the four-month time period, the government could have sought an extension under the mechanism provided in the statute. It did not do so. As in *Wayda*, the government's unexplained delay in this case is not reasonable.

### C. Alternatively, even under the government's interpretation, the pre-certification delay was still unreasonable.

Even if the Court were to adopt the government's interpretation of § 4241(d), it should still conclude that Carrington's timeliness claim has merit. That is, even if § 4241(d)'s four-month time limit does not start until hospitalization, the pre-certification delay in this case was still unreasonable in violation of both § 4241(d) and the due process clause.

41

Let's start with the relevant legal principles. Regardless of when § 4241(d)'s four-month clock starts, the provision must place a reasonableness limit on the pre-hospitalization commitment period. Judge Rosenbaum explained this well in *Alhindi*, reasoning that "two textual features of the statute"—the mandatory nature of commitment ("shall") and the "express limitation of the hospitalization to a 'reasonable period of time'"—"work together to statutorily require the Attorney General to hospitalize the defendant within a reasonable period of time from entry of the commitment order." *Alhindi*, 97 F.4th 814, 817 (11th Cir. 2024) (Rosenbaum, J., concurring). Beyond the statutory command, the pre-hospitalization period is subject to a reasonableness requirement under the due process clause. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed").

Turning to the facts of this case, it should be beyond dispute that the pre-hospitalization period becomes unreasonable when it exceeds § 4241(d)'s four-month hospitalization period. Numerous courts have reached that conclusion:

- "We do not think Jackson's 'reasonable relation' requirement permits a pre-hospitalization commitment period ... to last longer than the maximum time Congress permitted for the period of hospitalization itself." *Donnelly*, 41 F.4th at 1106; *id.* at 1106 (holding that pre-

hospitalization confinement for "nearly six months" exceeded "the outer limit of § 4241(d)" and constituted "a violation of the statute").

- "[W]hile courts differ as to when the IDRA's four-month 'clock' starts running, a delay longer than the four-month hospitalization period itself is presumptively unconstitutional." *United States v. McCarthy*, 703 F. Supp. 3d 1377, 1380 (M.D. Fla. 2023); *id.* (holding that pre-hospitalization confinement for "at least five months" was impermissible: "When the time waiting for a bed exceeds the time for custodial evaluation, the clock has already run.").

- "[T]he Court holds that the period of pre-hospitalization detention . . . must be reasonable and should not ordinarily extend beyond 'the maximum time Congress permitted for the period of hospitalization itself.'" *United States v. Lara*, 671 F.Supp.3d 1257, 1263-64 (D.N.M. Apr. 28, 2023) (quoting *Donnelly*); *id.* at 1264 ("the Court has little difficulty concluding that a detention period of eight months is unreasonable").

The same result is appropriate here. The government did not hospitalize Carrington until five months after the commitment order, a delay that rendered the pre-certification period unreasonable under both § 4241(d) and the due process clause. As a result, Carrington's timeliness claim had merit under *Wayda* regardless of when § 4241(d)'s four-month clock started to run.

*     *     *

For these reasons, the central premise of the district court's Rule 60(b) order—that Carrington's timeliness claim was unlikely to succeed—is erroneous as a matter of law.

**II.    Counsel performed unreasonably by failing to assert the timeliness claim; no conceivable strategic purpose can justify that failure.**

Because Carrington's timeliness claim had merit, *see supra* Section I, the next question is "whether trial counsel had a strategic reason for failing to raise" the claim. *Slocum*, 106 F.4th at 311. We evaluate that question using the well-known framework established by *Strickland v. Washington*, 466 U.S. 668 (1984).[9] Under *Strickland*, a defendant claiming ineffective assistance "must show (1) that counsel's performance was not objectively reasonable and (2) that counsel's deficient performance prejudiced him." *United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (en banc) (applying *Strickland*).

This Court has established clear standards for attorney performance under *Strickland*'s first prong. To begin, "[c]ounsel must demonstrate a basic

---

[9] An individual facing civil commitment has both a statutory and a constitutional right to counsel. *See* 18 U.S.C. § 4247(d); *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 27 (1981) (noting "presumption" that due process provides "a right to appointed counsel" in cases where "the indigent, if he is unsuccessful, may lose his personal freedom"); *Vitek v. Jones*, 445 U.S. 480, 496-97 (1980) ("it is appropriate that counsel be provided to indigent prisoners whom the State seeks to treat as mentally ill") (plurality opinion). "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Accordingly, because Carrington had the right to counsel in his civil-commitment proceeding, he also had the right to *effective* counsel. Although *Strickland* specifically involves the Sixth Amendment right to counsel, its framework is equally applicable when evaluating the effectiveness of counsel in the civil-commitment context. *See In re Henry B.*, 159 A.3d 824,

level of competence regarding the proper legal analysis governing each stage of a case." *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017). Counsel's "duties include the duty to investigate and to research a client's case in a manner sufficient to support informed legal judgments." *Id.* In making such judgments, counsel is not required to raise every claim or argument that "would have been plausible and non-frivolous." *Slocum*, 106 F.4th at 317 (citation omitted). But if "an unfiled motion would have had some substance," counsel's failure to act constitutes deficient performance unless "reasonable strategic reasons . . . warranted not filing the motion." *McNeil*, 126 F.4th at 942 (citation and internal quotation marks omitted). Although this Court's review of such strategic decisions is "highly deferential," it will not "not regard as tactical a decision by counsel if it made no sense or was unreasonable." *See United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (en banc) (citation omitted).

Here, counsel's performance fell below these standards. Carrington had preserved the timeliness claim in the Middle District criminal proceeding for the express purpose of setting up a "further motion in the civil cause in the EDNC, to wit: certificate should be dismissed." JA225. The timeliness claim

---

827 (Me. 2017) (collecting cases that use *Strickland* to evaluate effectiveness in civil-commitment cases).

had "some substance," *see McNeil*, 126 F.4th at 942, as shown by *Wayda* and by the *Carter* decision that adopted a similar argument in January 2022—several months before Carrington's civil-commitment proceeding began in May 2022. Advancing the timeliness claim was an obvious tactical choice for Carrington because it was dispositive: If the claim had succeeded, the civil-commitment certificate would have been dismissed and Carrington would have been released from custody.

Judge Heytens recognized in the first appeal that counsel's failure to advance the claim was nonsensical: "What I cannot fathom is why one would follow the course Carrington's lawyers did here." *Carrington*, 2024 WL 243317, *4. This failure, he noted, "raises obvious questions about the quality of representation Carrington received before the district court." *Id.*

The district court's contrary conclusion—that counsel performed adequately—is wrong. The court based that conclusion on a faulty legal premise. It believed that "uncertainty" about a potential claim's merit prevents any argument that a lawyer's performance was deficient under *Strickland*. *See* JA112 ("Being uncertain in the face of uncertainty, however, does not amount to a violation of the Sixth Amendment."); JA113 ("it was not grossly incompetent for Respondent's counsel to lack confidence in the merits of a *Wayda* argument and thus choose not to make one").

This analysis cannot be squared with binding precedent. A lawyer does not provide competent representation if he or she chooses only to advance those arguments that are certain to succeed. *See Carthorne*, 878 F.3d at 465-66 ("the ineffective assistance standard may require that counsel raise material issues even in the absence of decisive precedent"). Instead, as explained above, this Court's precedent dictates that counsel must have a "reasonable strategic reason[ ]" for deciding not to pursue a claim or argument that has "some substance." *McNeil*, 126 F.4th at 942.[10] In other words, the question under the performance prong is not whether the potential claim was certain to succeed. If the claim has "some substance," reasonable counsel must pursue it unless there is a strategic reason not to do so. Because no such strategic reason exists here, Carrington satisfies *Strickland*'s performance prong. *See, e.g.*, *United States v. Palomba*, 31 F.3d 1456, 1466 (9th Cir. 1994) (finding "deficient performance" where "no apparent or plausible tactical decision could explain counsel's failure to move for dismissal").

---

[10] In *Slocum*, this Court used slightly different wording, saying that "[c]ounsel must raise an argument where relevant authority strongly suggested it." 106 F.4th at 317 (citation omitted). We do not perceive there to be a substantive difference between the wording in *McNeil* and *Slocum*. In any event, there is no doubt that the timeliness claim was "strongly suggested" by "relevant authority" given that the lawyers in Carrington's criminal case had already preserved the argument based on this Court's decision in *Wayda*.

The district court's contrary analysis is similar to a government-proposed standard that this Court explicitly rejected in *McNeil*. The government there proposed a standard "under which counsel's performance could qualify as deficient only if no competent attorney would think a motion to suppress would have failed." 126 F.4th at 942 n.4. In other words, if any competent attorney would have thought the motion might fail—i.e., if there was any uncertainty about the motion's merits—then a failure to file the motion could not be deemed deficient. This Court rejected that argument as conflicting with circuit precedent establishing that, under "the performance prong," a defendant must show that an unfiled motion "would have had some substance" and that "no reasonable strategic reasons warranted not filing the motion." *Id.* (cleaned up).

Here, the applicable standard is satisfied. Carrington's timeliness motion had "some substance," and no strategic reasons could have supported a decision to forego the filing.

The district court made only one passing reference to a possible strategic consideration. In a footnote, the court observed that "it is possible to win a case to the detriment of one's client." JA113. It then made the following assertion:

> Part of the judgment to be exercised by lawyers is to determine whether a potentially meritorious legal argument is strategically

warranted. The decision by [Carrington's] counsel to focus on the issue of competency, thus helping to determine whether [Carrington] could safely be released into the community, fell within their sound judgment.

JA113. Thus, in the court's view, when civil-commitment counsel has doubts about a client's future behavior if released, it could be strategically reasonable for counsel to act on those doubts by foregoing "a potentially meritorious legal argument" and acquiescing in the client's indefinite civil commitment.

This view makes a mockery of a lawyer's duty of zealous advocacy, and it finds absolutely no support in governing law. Although counsel receives great deference on strategic or tactical issues, "[s]ome decisions . . . are reserved for the client," including the "[a]utonomy to decide . . . the objective of the defense." *McCoy v. Louisiana*, 584 U.S. 414 (2018). In the civil-commitment context, this autonomy means the client—not the attorney—chooses whether the objective is to agree to commitment or oppose it. And here there is no doubt that Carrington has always wished to oppose commitment, a point that the district court itself acknowledged in a separate footnote. JA115-116 (criticizing Carrington in a footnote for being "focused on obtaining release through the courts" and for "attacking his commitment order through motions practice").

The upshot is simple: Given Carrington's objective of opposing commitment, no possible strategic or tactical reason could have justified counsel's failure to raise the timeliness claim.

\* \* \*

In sum, Carrington can establish each prong of the *Strickland* test. On prong one, his counsel performed deficiently by failing to move to dismiss the civil-commitment certificate based on the pre-certification delay. On prong two, Carrington can establish prejudice because such a motion would have been successful, meaning that Carrington would have been deemed ineligible for commitment and, thus, released from custody.

## III.  Relief is warranted under Rule 60(b)(6).

The only remaining question is whether the circumstances of Carrington's case support relief under Rule 60(b)(6).  They do, and the district court erred in suggesting otherwise.

To obtain relief from a civil-commitment judgment under Rule 60(b), "a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). While Rule 60(b) enumerates five specific grounds for relief, including mistake and fraud, it also has a catch-all provision that permits

a court to grant relief "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Although the catch-all's "open-ended language" provides a "grand reservoir of equitable power to do justice in a particular case," a movant must show "extraordinary circumstances to invoke it." *Bixby v. Stirling*, 90 F.4th 140, 147 (4th Cir. 2024) (citations omitted).

Carrington's motion should prevail under these standards. With respect to the first prong, Carrington filed his Rule 60(b) motion less than a year after this Court affirmed the civil-commitment order, and the district court did not suggest that the motion was untimely.

Second, on the merits, this case presents "extraordinary circumstances" that justify relief under Rule 60(b)(6). Put most simply, the conduct of Carrington's lawyer in the civil-commitment case was inexplicable and severely damaging. The record establishes beyond dispute that Carrington's objective was to oppose an involuntary civil commitment and that the lawyers in his criminal case had preserved the timeliness argument for precisely that reason. Yet his civil-commitment lawyer did nothing at all to oppose commitment. And that failure to act on Carrington's behalf had devastating consequences, preventing this Court from considering the timeliness argument on its merits and leaving Carrington to linger in unlawful commitment from early 2022 until now, four years and counting. The lawyer's inaction made no

sense, as Judge Heytens has already recognized: "What I cannot fathom is why one would follow the course Carrington's lawyers did here." *Carrington*, 2024 WL 243317, *4.

Third, the government will not suffer any unfair prejudice. The government remains in the same position it would've been in if Carrington's lawyer had raised the timeliness claim in the civil-commitment proceeding. That is, the government has a full opportunity to litigate its position, both with respect to the relevant statutory-interpretation issue and the reasonableness of the pre-certification delay. If this Court agrees that Carrington was ineligible for commitment, the government will not be harmed. In that scenario, counsel's failure to act will have permitted the government to civilly commit Carrington for four-plus years even though he should not have been subject to such commitment. The *unfair* prejudice in this scenario was suffered by Carrington, not by the government.

The district court's contrary ruling is legally unsound. As discussed above, the court's denial was based primarily on its conclusion that Carrington's timeliness claim lacked merit—and, therefore, so too did his ineffective-assistance claim. JA115 (reiterating, in Rule 60(b) discussion, that Carrington's timeliness claim "was unlikely to be successful"). For the reasons discussed above, the court's conclusion is erroneous. *See supra* Section I-II. The

court's reliance on this erroneous premise is, by itself, enough to require vacatur of the denial order. *See Allen*, 165 F.4th at 286 (explaining, in the Rule 60(b) context, that "an error of law is by definition an abuse of discretion, and such an error is alone grounds for reversal") (citation omitted).

The district court also suggested an alternative basis for denying Rule 60(b) relief. It reasoned that "losing a meritorious argument to default" does not always constitute "extraordinary circumstances." JA115. Instead, because Carrington has been determined "to meet § 4246's criteria for commitment," the court asserted that "it would neither be in [Carrington's] best interest nor the communities to vacate his commitment order and release him." JA116.

This rationale does not provide a sufficient basis for denying Rule 60(b) relief. Under the court's reasoning, Rule 60(b) would never be available in the civil-commitment context. But such a categorical rule is impermissible under Rule 60(b)(6), which creates "an equitable remedy to be decided as a case-by-case inquiry that intensively balances numerous factors." *In re West*, 103 F.4th 417, 420 (6th Cir. 2024); *see Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 445-46 (9th Cir. 2019) (explaining that district courts analyzing a Rule 60(b)(6) motion must undertake a "case-by-case inquiry" and an analysis that "capture[s] all of the relevant circumstances"); *FTC v. Ross*, 74 F.4th 186, 195 (4th Cir. 2023)

(referring to "the Rule 60(b)(6) analysis" as a "totality of the circumstances" inquiry).

Such a categorical rule also makes little sense as a practical matter. Not every defendant facing civil commitment is the same. While some have committed egregious and violent acts like murder or sexual assault, others are charged with much less serious offenses. Carrington is a prime example. His charge arises from a single overheated email sent to a U.S. Senator in the aftermath of the 2020 election, and a conviction for that offense—assuming the email rose to the level of a threat unprotected by the First Amendment—would carry a statutory maximum of five years. Treating Carrington as the equivalent of a murderer or child rapist is unjustified, and yet that is exactly what the district court's categorical rule does.

This Court should vacate the district court's order denying Carrington's Rule 60(b)(6) motion. It should also find that Carrington's case presents "extraordinary circumstances" justifying relief under Rule 60(b)(6). Alternatively, the Court should vacate the order and remand with instructions for the district court to conduct the required case-specific analysis free of the legal errors that tainted its initial ruling.

## CONCLUSION

This Court should vacate the district court's Rule 60(b) order and remand either with instructions that the motion be granted or for further proceedings consistent with instructions from this Court.

## REQUEST FOR ORAL ARGUMENT

Carrington requests oral argument. The procedural history and legal issues presented by this appeal are complex; oral argument would benefit the Court. Likewise, several of the issues presented have the potential to recur, and a published opinion would provide binding guidance to both practitioners and district courts.

Date: February 20, 2026

Respectfully submitted:

John G. Baker
FEDERAL PUBLIC DEFENDER FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

/s/ Joshua B. Carpenter
Joshua B. Carpenter
Appellate Chief
Federal Public Defender for the
Western District of North Carolina
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
Joshua_Carpenter@fd.org

## CERTIFICATE OF COMPLIANCE

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificate of counsel, addendum, attachments):

    This document contains <u>12,066</u> words.

2.  This document complies with the typeface requirements because: This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Calisto MT.

    Date: February 20, 2026

<u>/s/Joshua B. Carpenter</u>
Joshua B. Carpenter
Appellate Chief
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
