No. 25-6569

# United States Court of Appeals
# for the Fourth Circuit

---

**UNITED STATES OF AMERICA,**
*Appellee,*

**v.**

**THEODORE MACON CARRINGTON, JR.,**
*Appellant.*

---

*On Appeal from the United States District Court*
*for the Eastern District of North Carolina*

---

## RESPONSE BRIEF OF THE UNITED STATES

---

W. ELLIS BOYLE
*United States Attorney*

BY: GENNA DANELLE PETRE
*Special Assistant United States Attorney*

150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4530

*Attorneys for Appellee*

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... iii

Statement of Jurisdiction ............................................................................. 1

Statement of Issues....................................................................................... 2

Statement of Facts........................................................................................ 3

Summary of Argument................................................................................. 14

Argument ...................................................................................................... 18

**I.     The district court did not abuse its discretion in denying Carrington's request for relief under Rule 60(b)(6) because he could not demonstrate satisfaction of the threshold elements of such a claim, let alone extraordinary circumstances warranting relief.**

     A.    Standard of Review................................................................... 18

     B.    Discussion of Issue. ................................................................. 19

          1.    Carrington cannot meet the threshold conditions required for relief under Rule 60(b). ................................. 20

               a.    Carrington failed to timely request relief under Rule 60(b)................................................. 20

               b.    Carrington did not present a meritorious claim of ineffective assistance of counsel................. 23

               c.    The United States will suffer unfair prejudice if the judgment is set aside……………………………………..34

               d.    Carrington cannot demonstrate that extraordinary circumstances require relief…………………..………36

          2.    Respondent cannot establish he is entitled to relief under any of the provisions of Rule 60(b)………………..39

Conclusion .................................................................................................... 43

Certificate of Compliance……………………………………………………..44

# TABLE OF AUTHORITIES

## Cases

*Ackermann v. United States*,
340 U.S. 193 (1950) ................................................................................42

*Afanwi v. Holder*,
558 U.S. 801(2009) ................................................................................24

*Afanwi v. Mukasey*,
526 F.3d 788 (4th Cir. 2008) ..................................................................24

*Aikens v. Ingram*,
652 F.3d 496 (4th Cir. 2011) ........................................... 17, 18, 37, 41

*Al Sabah v. Agbodjogbe, No.*,
SAG-17-730, 2020 WL 7351603 (D. Md. Dec. 14, 2020) ..................23

*Bell v. Eastman Kodak Co.*,
214 F.3d 798 (7th Cir. 2000) ..................................................................37

*Carbajal v. Lynch*,
655 F. App'x 959 (unpublished) ............................................................24

*Central Operating Co. v. Utility Workers of America*,
491 F.2d 245 (4th Cir. 1974) ..................................................................21

*Compton v. Alton S.S. Co.*,
608 F.2d 96 (4th Cir. 1979) ....................................................................40

*Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*,
383 F.2d 249 (4th Cir. 1967) ........................................................... 18, 21

*Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*,
993 F.2d 46 (4th Cir. 1993) ............................................................. 19, 41

*Fed. Trade Comm'n v. Ross*,
74 F.4th 186 (4th Cir. 2023) ..................................................................42

*Harrington v. Richter*,
562 U.S. 86 (2011) ...........................................................................25

*In re Burnley*,
988 F.2d 1 (4th Cir. 1993) ................................................................19

*Klapprott v. United States*,
335 U.S. 601 (1949).........................................................................40

*Knowles v. Mirzayance*,
556 U.S. 111 (2009) ....................................................................11, 32

*L.J. v. Wilbon*,
633 F.3d 297 (4th Cir. 2011) ...........................................................18

*Lawler v. Am. Bldg. Contrs., Inc.*,
149 F. App'x 131 (4th Cir. 2005) (unpublished)...............................23

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988).........................................................................37

*McLawhorn v. John W. Daniel & Co., Inc.*,
924 F.2d 535 (4th Cir. 1991) ...........................................................21

*Mendez v. Craven*,
No. 5:07-HC-2173, 2008 WL 5640104 (E.D.N.C. Apr. 2, 2008)........25

*MLC Automotive, LLC v. Town of Southern Pines*,
532 F.3d 269 (4th Cir. 2008) ...........................................................18

*Moses v. Joyner*,
815 F.3d 163 (4th Cir. 2016) ...................................................... 22, 39

*Nat'l Credit Union Admin. Bd. v. Gray*,
1 F.3d 262 (4th Cir. 1993) ...............................................................19

*Robinson v. Wix Filtration Corp.*,
599 F.3d 403 (4th Cir. 2010) ...........................................................19

*Saakian v. I.N.S.*,
252 F.3d 21 (1st Cir. 2001).............................................................25

*Santiago-Rodriguez v. Holder*,
657 F.3d 820 (9th Cir. 2011) ...................................................................24

*Siner v. Eastside Cmty. Invs., Inc.*,
22 F. App'x 642 (7th Cir. Nov. 21, 2001) (unpublished) ........................... 17, 36

*Strickland v. Washington*,
466 U.S. 668 (1984) ............................................................. passim

*Teague v. Lane*,
489 U.S. 288 (1989) ...................................................................22

*United States v. Alhindi*,
97 F.4th 814 (11th Cir. 2024) ...................................................30

*United States v. Blackledge*,
751 F.3d 188 (4th Cir. 2014) ................................................. 14, 23

*United States v. Carrington*,
No. 23-6348, 2024 WL 243317 (4th Cir. Jan. 23, 2024) ........................... passim

*United States v. Carter*,
583 F.Supp.3d 94 (D.D.C. 2022) .................................................30

*United States v. Curbow*,
16 F.4th 92 (4th Cir. 2021) ..................................................... passim

*United States v. Debenedetto*,
618 F. App'x 751 (4th Cir. Aug. 18, 2015) (unpublished) ................................39

*United States v. Donnelly*,
41 F.4th 1102 (9th Cir. 2022) ...................................................30

*United States v. Flannery*,
No. 88-5605, 1989 WL 79731 (4th Cir. July 13, 1989) .............................. passim

*United States v. Lara*,
671 F.Supp.3d 1257 (D.N.M. 2023) ...............................................30

*United States v. Lesch*,
717 F. App'x 244 (4th Cir. Feb 9, 2018) (unpublished) .................. 14, 24, 25, 26

*United States v. Magassouba*,
  544 F.3d 387 (2d Cir. 2008) ....................................................................30

*United States v. Mahoney*,
  105 F. Supp. 3d 140 (D. Mass. 2015) ...................................... 15, 24, 33

*United States v. Rendon-Romero*
  738 F.Supp.3d 697, 702 (E.D.N.C. 2024).............................................30

*United States v. McRae*,
  793 F.3d 392 (4th Cir. 2015) ..................................................................18

*United States v. Savage*,
  737 F.3d 304 (4th Cir. 2013) ..................................................................28

*United States v. Wayda*,
  966 F.3d 294 (4th Cir. 2020) ........................................................ passim

*United States v. Welsh*,
  879 F.3d 530 (4th Cir. 2018) ...................................................... 18, 40

*United States v. Williams*,
  299 F.3d 673 (8th Cir. 2002) ..................................................................39

*Werner v. Carbo*,
  731 F.2d 204 (4th Cir. 1984) ..................................................................20

*Zeru v. Gonzales*,
  503 F.3d 59 (1st Cir. 2007)......................................................................24

## Statutes

18 U.S.C. § 875 .............................................................................................3

18 U.S.C. § 4241(d) ........................................................................... passim

18 U.S.C. § 4246 ................................................................................. passim

18 U.S.C. § 4247 ....................................................................................27, 37

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 2241 ......................................................................37

## Rules

Federal Rule of Civil Procedure 60(b)(6) ........................................ passim

Federal Rule of Civil Procedure 60(c) ........................................ 14, 20

Rule 60(b)............................................................................ passim

## Regulations

28 C.F.R. § 549.41 ..................................................................28

# STATEMENT OF JURISDICTION

This is an appeal from an order denying Carrington's Rule 60(b) motion issued by the United States District Court for the Eastern District of North Carolina on June 2, 2025. [J.A. 103–17]. Jurisdiction to the district court was established by 18 U.S.C. § 4246.

Carrington timely filed a *pro se* notice of appeal in a document dated July 7, 2025, and filed to the docket on July 14, 2025. [J.A. 118–19]. Jurisdiction to this Court is established by 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

1.      Whether the district court abused its discretion in finding that Carrington failed to meet the threshold requirements warranting relief under Federal Rule of Civil Procedure 60(b)(6) based on a claim of ineffective assistance of counsel.

<u>**STATEMENT OF FACTS**</u>

**Carrington's Criminal Case in the
Middle District of North Carolina**

On January 4, 2021, an indictment was filed in the United States District Court for the Middle District of North Carolina ("criminal court") against Carrington for transmitting via interstate commerce a communication containing a threat to injure a person in violation of 18 U.S.C. § 875. [J.A. 20–21]. Specifically, Carrington was accused of sending an email to Senator Ron Johnson containing threats, including the title of the email, which read "TO Senator Ron Johnson – I'll Fucking Kill You Dead." [J.A. 20 (capitalization in original)].

Due to concerns about Carrington's mental status and competency to stand trial, a competency assessment was ordered in February 2021. [J.A. 4; J.A. 103; J.A. 128]. Following the completion of an evaluation and report by the Bureau of Prisons ("BOP"), the criminal court made an oral finding that Carrington was not competent to stand trial. [J.A. 4]. As required by 18 U.S.C. § 4241(d), the criminal court committed Carrington to the custody of the Attorney General for hospitalization and treatment in a suitable facility for "a reasonable period of time not to exceed four months, as necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit a proceeding to go forward." [J.A. 4; J.A. 103–04; J.A. 155–60]. The criminal court issued a written order on August 23, 2021,

formally committing Carrington to the custody of the Attorney General. [J.A. 4; J.A. 155–60].

Carrington was designated to the Federal Medical Center in Butner, North Carolina ("FMC Butner") for competency restoration pursuant to section 4241(d). [J.A. 104]. Carrington arrived at FMC Butner on January 18, 2022, meaning the 120-day evaluation period would expire on May 18, 2022. [J.A. 104]. Allyson Sharf, Ph.D., was assigned to Carrington's case. In a report dated May 2, 2022, 16 days before the end of the evaluation period, Dr. Sharf opined that Carrington was not competent to stand trial and not substantially likely to improve to such an extent that the criminal case against him could proceed. [J.A. 162–78].

On June 10, 2022, the Government requested that the criminal court schedule a hearing to resolve the issue of Carrington's competency to stand trial. [J.A. 179–84]. The competency hearing was scheduled for August 26, 2022, during which the criminal court adopted Dr. Sharf's opinion that Carrington remained not competent to stand trial. [J.A. 9; J.A. 217–18]. The criminal court noted it would stay the entry of any written order for a period of ten days to allow Carrington to file any motions related to the timeliness of the proceedings against Carrington. [J.A. 220–21]. Briefing was completed in the criminal case by the parties on September 15, 2022, [J.A. 224–36], and the criminal court entered an order finding Carrington not competent to stand trial and not substantially likely to attain the capacity to proceed in the foreseeable future, [J.A. 237–40].

**Civil Commitment Proceedings in the
Eastern District of North Carolina**

During the course of Carrington's competency restoration pursuant to 18 U.S.C. § 4241(d), on April 14, 2022, Carrington was evaluated by the Risk Assessment Panel at FMC Butner for potential civil commitment under 18 U.S.C. § 4246, consistent with the decision of the United States Court of Appeals for the Fourth Circuit in *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020). [J.A. 177–78; J.A. 249].

As noted *supra*, in a report dated May 2, 2022, Dr. Sharf opined that Carrington remained not competent to stand trial and was not substantially likely to restore to competency to allow his criminal case to proceed. [J.A. 162–78]. As a result, on May 26, 2022, a Certificate of Mental Disease or Defect and Dangerousness ("Certificate of Dangerousness") was filed against Carrington in the United States District Court for the Eastern District of North Carolina ("civil commitment court"). [J.A. 38–43]. The United States moved to stay the civil commitment proceedings pending resolution of Carrington's competency to stand trial by the criminal court. [J.A. 44–47]. On June 29, 2022, the civil commitment court granted the motion to stay the proceedings. [J.A. 48].

On October 21, 2022, the United States moved to lift the stay in light of the criminal court's findings that Carrington was not competent to stand trial and not restorable to competency in the foreseeable future. [J.A. 49–52]. The same day, the United States moved for an evaluation of Carrington's mental condition and dangerousness pursuant to section 4246(b). [J.A. 53–56]. On

November 17, 2022, the civil commitment court lifted the stay and authorized a BOP evaluator to conduct an evaluation of Carrington. [J.A. 57–58]. On November 22, 2022, the civil commitment court also authorized an evaluation by a court-appointed, respondent-selected evaluator. [J.A. 27]. Carrington selected Hans Stelmach, M.D., to conduct the independent evaluation. [J.A. 28].

On January 3, 2023, the United States submitted the report of Dr. Sharf, who diagnosed Carrington with delusional disorder, mixed type, with bizarre content, multiple episodes, currently in an acute episode. [J.A. 250–70]. Dr. Sharf employed the use of the Historical, Clinical, Risk Management 20 Version 3 ("HCR-20"), an assessment tool that applies structured professional judgment in estimating violence risk. [J.A. 263–68]. The tool consists of rating 20 items empirically linked to violent recidivism. [J.A. 263]. Unlike an actuarial measure, the HCR-20 does not provide a numeric estimate of risk, but rather a qualitative judgment regarding the risk of future violence. [J.A. 263–64]. In applying the HCR-20 risk factors to this case, Dr. Sharf found Carrington to be a "high risk of engaging in acts that could result in serious physical harm to others." [J.A. 264]. Ultimately, Dr. Sharf opined that as a result of his mental disease or defect, namely, delusional disorder, Carrington posed a substantial risk of bodily injury to another person or serious damage to the property of another. [J.A. 269–70].

On March 7, 2023, Carrington filed the report completed by Dr. Stelmach. [J.A. 28]. Dr. Stelmach indicated that Carrington refused to engage in an

interview with him as part of his forensic evaluation. [J.A. 60]. Additionally, Carrington requested that Dr. Stelmach not review any of the medical records moving forward and further requested that Dr. Stelmach not offer a written opinion or report to the civil commitment court. [J.A. 60]. Consistent with the civil commitment court's order, Dr. Stelmach did submit a report, but declined to render a diagnosis or offer an opinion on dangerousness. [J.A. 60].

The civil commitment hearing was scheduled for March 14, 2023. [J.A. 271–303]. Carrington did not move for any further evaluations of his mental condition or dangerousness in advance of the hearing. [J.A. 28–29]. Nor did Carrington move to dismiss the civil commitment proceedings based on *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020), or *United States v. Curbow*, 16 F.4th 92 (4th Cir. 2021), prior to the March 14, 2023, hearing. [J.A. 28–29].

The civil commitment hearing was held in the Eastern District of North Carolina on March 14, 2023, as scheduled. [J.A. 271–303]. During the hearing, the United States presented the testimony of Dr. Sharf. [J.A. 273–90]. Carrington did not call any witnesses but offered a statement for the civil commitment court's consideration. [J.A. 290–303]. At no point during his statement did Carrington raise issues related to *Wayda* or *Curbow*. [J.A. 290–303].

At the conclusion of the hearing, the civil commitment court took the matter under advisement. [J.A. 303]. On March 20, 2023, the civil commitment court issued an order adopting Dr. Sharf's opinion and concluding "that as a result of his mental disease or defect respondent's release would create a

substantial risk of bodily injury to another person or property damage." [J.A. 59–61]. Thus, Carrington was ordered committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246. [J.A. 62].

<div align="center">**Carrington's Appeals to the Fourth Circuit**</div>

Carrington filed two separate appeals to the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit" or "this Court") prior to the instant appeal.

First, during the pendency of his civil commitment proceedings, Carrington appealed the criminal court's finding that he was not competent and not restorable to competency, and subsequently subject to civil commitment under section 4246, on September 29, 2022. [J.A. 9]. The case was assigned appeal number 22-7138. [J.A. 9].

Following his civil commitment pursuant to 18 U.S.C. § 4246 in the Eastern District of North Carolina, Carrington also appealed that order. [J.A. 29]. The case was assigned appeal number 23-6348. [J.A. 29].

Both appeals argued essentially the same premise—that his certification as a mentally ill and dangerous person pursuant to 18 U.S.C. § 4246 violated the timeliness standards outlined in *Wayda*. *See United States v. Carrington*, No. 23-6348, 2024 WL 243317, at *1–2 (4th Cir. Jan. 23, 2024). In short, Carrington argued that his hospitalization under 18 U.S.C. § 4241(d) became effective on the date of the criminal court's order, which was August 23, 2021. *Id.* at *2–3. Thus, it expired four months later, on or about December 23, 2021. *Id.* Under

<div align="center">8</div>

this theory, he argued, his certification as a mentally ill and dangerous person on May 26, 2022, was untimely. *Id.*

On January 23, 2024, this Court issued two simultaneous opinions addressing Carrington's dual appeals. Ultimately, this Court found that it lacked jurisdiction over the criminal appeal, as the criminal court's order did not amount to a final judgment. *Id.* at *2. As to the civil commitment appeal, this Court concluded that Carrington had waived his arguments related to the timeliness of the Certificate of Dangerousness by failing to raise them before the district court. *Id.* at *2–3.

In a concurring opinion, Judge Heytens affirmed the reasoning of the majority. *Id.* at *4. However, Judge Heytens wrote in concurrence to address his belief that Carrington may still have other avenues for relief open to him, including potential relief under Rule 60(b)(6) or a habeas petition related to ineffective assistance of counsel. *Id.*

**Carrington Seeks Rule 60(b)(6) Relief**

On December 20, 2024, almost twenty-one months after the district court ordered Carrington civilly committed and eleven months after this Court issued its opinions in Carrington's dual appeals in which Judge Heytens suggested possible avenues of relief, Carrington filed a motion for relief under Federal Rule of Civil Procedure 60(b)(6) with the civil commitment court. [J.A. 63–77]. In his motion, Carrington argued that he was represented by ineffective counsel who failed to raise the *Wayda* timeliness issues. [J.A. 63–77]. Such extraordinary relief was necessary as there is "no relief from [ ] commitment in

sight" and Carrington's "indefinite commitment was unconstitutionally generated after nearly 5 months of detention where [he] was denied process and effective counsel." [J.A. 75].

The United States opposed the motion, arguing Carrington failed to raise this issue in a timely manner and failed to meet the threshold requirements warranting relief under Rule 60(b). [J.A. 78–94].

On June 2, 2025, the civil commitment court denied Carrington's request for relief. [J.A. 103–17]. The district court conducted an analysis of Carrington's ineffective assistance of counsel claim, applying the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687– 88 (1984). [J.A. 108].

> This case asks the court to consider the performance of Respondent's counsel as they navigated the transition between the § 4241(d) competency proceedings in the Middle District of North Carolina and the § 4246 civil commitment proceedings here. Critically, in making this assessment, the pertinent question is not whether Respondent had a valid *Wayda* claim, or even whether it would have been prudent for counsel to raise such an argument. *See id.* at 687–88. That is not what *Strickland* requires. Instead, the court must ask whether the performance of counsel in choosing not to raise a timeliness objection was so deficient that Respondent was wholly deprived of his right to effective counsel. *See id.* Here, it was not.

[J.A. 108].

The district court discussed Carrington's argument that he was not properly in the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d), as required by the eligibility provision of section 4246, at the time of his

certification as a mentally ill and dangerous person on May 26, 2022. [J.A. 109–14]. However, the district court was not persuaded by Carrington's arguments, especially in light of the conclusions reached by "virtually every court to consider the question" of when hospitalization begins. [J.A. 112]. Moreover, the district court noted that while the Fourth Circuit has not decisively ruled on this issue, it has in at least one unpublished opinion treated the date of hospitalization as the operative date for the commencement of the four-month evaluation period. [J.A. 110–11 (citing *United States v. Flannery*, No. 88-5605, 1989 WL 79731, at *3–4 (4th Cir. July 13, 1989))]. Additionally, in Carrington's civil appeal, the Fourth Circuit similarly opined that "the text of the statute can reasonably [be] read to tie this time limit to the start of hospitalization, not commitment[,]" though it ultimately passed on the "thorny issue." [J.A. 111 (quoting *Carrington*, 2024 WL 243317, at *3 (alterations in original))]. Thus, the district court found that Carrington was unlikely to find success in an argument that his hospitalization commenced on August 23, 2021, rather than on January 18, 2022, when he arrived at FMC Butner.

"Having considered this backdrop, the court finds that the performance of Respondent's counsel fell well within the range of reasonable professional assistance guaranteed by the Sixth Amendment." [J.A. 111–12]. In doing so, the district court highlighted that counsel is not required to make "every nonfrivolous argument, 'regardless of its merit, viability, or realistic chance for success.'" [J.A. 112 (quoting *Knowles v. Mirzayance*, 556 U.S. 111 (2009))]. While the district court acknowledged that the decision not to pursue the *Wayda*

timeliness argument might now appear to be an error, it does not rise to the level required by *Strickland*. [J.A. 112].

Finally, considering whether Carrington was entitled to relief under Rule 60(b)(6), the district court opined that he was not entitled to such relief, even if he had "made a stronger case for ineffective assistance." [J.A. 114]. First, the court opined that Carrington was unlikely to succeed on the merits of his claim of ineffective assistance of counsel. [J.A. 115]. Second, the court stressed that setting aside the judgment in this case would not be in the best interest of Carrington or the community. [J.A. 115–16]. As Rule 60(b)(6) relief is "designed to do substantial justice," the court expressed "serious concerns about whether it is an appropriate tool to be utilized under these circumstances." [J.A. 115]. Carrington was certified, and subsequently committed for care, custody, and treatment as a mentally ill and dangerous person pursuant to 18 U.S.C. § 4246. [J.A.115]. "[S]ince that determination, he has been reevaluated twice and found to continue to meet § 4246's criteria for commitment." [J.A. 115]. Additionally, Carrington was described by evaluators as "irritable, angry, hostile, delusional, and hyperverbal" and "wholly unwilling to consider psychotropic medication." [J.A. 115 n.2]. Rather, he remains "solely focused on obtaining release through the courts." [J.A. 115 n.2]. Certainly, his release to the community would not be in the interest of justice in such a condition.

In closing, the district court noted that relief under Rule 60(b)(6) is discretionary. [J.A. 116]. The district court, in its discretion, denied Carrington's request for relief under Rule 60(b)(6). [J.A. 116–17].

Carrington filed a *pro se* notice of appeal dated July 7, 2025, and docketed on July 14, 2025.  [J.A. 118–19].

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in denying Carrington's Federal Rule of Civil Procedure 60(b)(6) request for relief from civil commitment and this Court should affirm the district court's ruling.

To succeed on the merits of his 60(b)(6) motion, Carrington needed to establish four elements generally, and an entitlement to relief under a specific provision of the rule. The absence of any one element would defeat his motion. Carrington cannot establish any.

First and foremost, Carrington failed to timely raise his arguments of ineffective assistance of counsel, filing his Rule 60(b)(6) motion 641 days after the order of civil commitment from which he seeks relief under Federal Rule of Civil Procedure 60(b)(6). There is no universe where this is considered timely under Federal Rule of Civil Procedure 60(c). Even if this motion was timely, Carrington is not entitled to the relief sought, because he cannot establish a meritorious claim. This Court has previously found that individuals subject to civil commitment are not entitled to effective assistance of counsel under the Sixth Amendment. *See United States v. Blackledge*, 751 F.3d 188, 197 (4th Cir. 2014) (holding that a person subject to civil commitment under the Adam Walsh Act, 18 U.S.C. § 4248, "does not have a right to effective assistance of counsel under the Sixth Amendment."). The Court has since declined to determine whether civilly committed individuals possess such a right under the Due Process Clause of the Fifth Amendment. *Id.*; *United States v. Lesch*, 717 F. App'x 244, 247 (4th Cir. Feb 9, 2018) (per curiam).

14

However, the Court need not answer that question here, or determine the proper standard under which to analyze a constitutional claim of this nature, if such a constitutional right exists. Both the test under *Strickland v. Washington*, 466 U.S. 668 (1984), and the test delineated by *United States v. Mahoney*, 105 F. Supp. 3d 140, 142–43 (D. Mass. 2015), require Carrington prove that he was prejudiced by the alleged ineffective assistance of counsel.

To show prejudice in this context, Carrington must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But careful analysis of Carrington's case leaves the reviewer with a firm belief that Carrington would have been civilly committed pursuant to section 4246 regardless of who represented him.

Despite Carrington's arguments to the contrary, there is minimal (if any) support for the notion that hospitalization under 18 U.S.C. § 4241(d) begins on the date of the criminal court's order, rather than on the date of arrival at the "suitable facility." Rather, "virtually every court to consider the question has reached the same conclusion"—that hospitalization commences on the date of arrival at the facility. [J.A. 112]. Even this Court, albeit in an unpublished opinion, has treated the date of hospitalization as the date on which the four-month evaluation commences. *See United States v. Flannery*, No. 88-5605, 1989 WL 79731, at *3–4 (4th Cir. July 13, 1989). Moreover, in addressing Carrington's civil appeal, this Court noted that it was not "plainly erroneous to conclude that the four-month period established [by] § 4241(d)(1) kicks in only

15

once the defendant is hospitalized." *United States v. Carrington,* No. 23-6348, 2024 WL 243317, at *3 (4th Cir. Jan. 23, 2024) (unpublished). "[T]he text of the statute can be reasonably read to tie this time limit to the start of the hospitalization, not commitment." *Id.* Thus, if hospitalization commences on the date of arrival at the suitable facility, the operative date for the timeliness analysis here is January 18, 2022. This means that Carrington's competency restoration period under section 4241(d) expired on or about May 18, 2022. Carrington was certified as mentally ill and dangerous eight days later, on May 26, 2022. As this Court noted in the civil appeal, Carrington's certification on May 26, 2022, "was not plainly unreasonable" under the standard established in *Curbow*. *Id.*

In light of this analysis, there can be no universe in which Carrington's attorney(s)' failure to raise the timeliness argument amounts to the type of prejudice intended by the Supreme Court in *Strickland*. The lack of prejudice Carrington suffered from the purportedly ineffective assistance of counsel is in stark contrast to the prejudice the nonmoving party—the United States—would suffer if this Court overturned the decision of the district court. Granting relief would be patently prejudicial to the United States and is not justified by a single exceptional circumstance. Rather, Carrington's release to the community would create a substantial risk of bodily injury to another person or serious damage to the property of another, as found by the district court and affirmed by this Court on appeal. Carrington's release is not in the interest of justice, and thus, the granting of his request for relief is contrary to both law and policy.

Finally, while this Court has never addressed whether Rule 60(b)(6) is the proper vehicle through which to seek relief for ineffective assistance of counsel, at least one sister circuit has addressed the matter, finding that such relief is not warranted. *See Siner v. Eastside Cmty. Invs., Inc.*, 22 F. App'x 642 (7th Cir. Nov. 21, 2001). Even if appropriate, Carrington failed to timely raise the argument in his original appeal, and thus, should not be permitted to do so now. *Aikens v. Ingram,* 652 F.3d 496, 501 (4th Cir. 2011).

Accordingly, this Court should affirm the district court's denial of relief under Rule 60(b)(6).

<center>**ARGUMENT**</center>

**I. The district court did not abuse its discretion in denying Carrington's request for relief under Rule 60(b)(6) because he could not demonstrate satisfaction of the threshold elements of such a claim, let alone extraordinary circumstances warranting relief.**

**A. Standard of Review.**

This Court reviews the denial of a motion for relief under Rule 60(b)(6) for abuse of discretion. *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011). The "burden here is a heavy one, as a district court abuses its discretion only where it 'has acted arbitrarily or irrationally[,] . . . has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises.'" *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018) (quoting *L.J. v. Wilbon*, 633 F.3d 297, 304 (4th Cir. 2011)). This Court has noted that this deferential standard of review regarding Rule 60(b) motions "recognizes the district court's superior position for evaluating such merits." *United States v. McRae*, 793 F.3d 392, 410 (4th Cir. 2015); *see also Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.,* 383 F.2d 249, 251 (4th Cir. 1967) ("The disposition of motions made under Rule [ ] . . . 60(b) is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court."). Importantly, in reviewing the denial of a Rule 60(b) motion for abuse of discretion, this Court "'may not review the merits of the underlying order, [it] may only review the denial of the motion with respect to the grounds set forth in Rule 60(b).'" *MLC Automotive,*

*LLC v. Town of Southern Pines*, 532 F.3d 269, 277 (4th Cir. 2008) (citing *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1993) (per curiam)).

## B.      Discussion of Issue.

Carrington requests this Court find that the district court abused its authority in denying his request for relief under Federal Rule of Civil Procedure 60(b).  This Court should decline the invitation and instead affirm the decision of the district court.

Rule 60(b) provides that "[o]n motion and just terms, [a] court may relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b).  To obtain relief under Rule 60(b), a moving party must first demonstrate (1) that its motion is timely, (2) that it has a meritorious claim or defense, (3) that the nonmoving party will not suffer unfair prejudice from setting aside the judgment, and (4) that exceptional circumstances justify relief. *See, e.g.*, *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 412 n.12 (4th Cir. 2010); *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993); *Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993).

Second, if these threshold conditions are met, the court then determines whether the movant has satisfied "one of the six enumerated grounds for relief under Rule 60(b)." *Nat'l Credit Union Admin. Bd.*, 1 F.3d at 266; *see also Dowell*, 993 F.2d at 48.  At this second stage, the moving party "must clearly establish the grounds . . . to the satisfaction of the . . . court and such grounds must be clearly substantiated by adequate proof." *In Re Burnley*, 988 F.2d at 3 (quotations

and citations omitted). These can include fraud, misrepresentation, or misconduct by an opposing party; that the judgment is void; or any other reason that justifies relief. Fed. R. Civ. P. 60(b).

### 1. Carrington cannot meet the threshold conditions required for relief under Rule 60(b).

As an initial matter, Carrington cannot meet the threshold requirements required to seek relief under Rule 60(b)(6), and thus, his request for relief is barred. In order to be eligible for relief, Carrington must make a showing that all four threshold requirements are met. He cannot.

### a. Carrington failed to timely request relief under Rule 60(b).

A motion for relief under Rule 60(b) must be made "within a reasonable time" and "the movant must make a showing of timeliness." *Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir. 1984); Fed. R. Civ. P. 60(c). As Carrington failed to abide by this simple rule, he is precluded from Rule 60(b) relief.

Carrington was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246(d) on March 20, 2023. [J.A. 59–61]. Thus, to seek relief under Rule 60(b), Carrington's motion must have been filed within a reasonable time following the entry of the order. It was not. Rather, Carrington requested relief under Rule 60(b), arguing ineffective assistance of counsel for the first time, on December 20, 2024, approximately **641 days** (twenty-one months, or one year and nine months) after the district court entered its order of

commitment. [J.A. 63]. This is by no means reasonable.[1] *See McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991) ("We have held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay."); *see also Central Operating Co. v. Utility Workers of America*, 491 F.2d 245 (4th Cir. 1974); *Consolidated Masonry & Fireproofing, Inc. v. Wadman Constr. Corp.*, 383 F.2d 249 (4th Cir. 1967).

Carrington is dismissive of this issue in his brief, arguing that his request for relief is timely in relation to the Fourth Circuit's judgment on his dual appeals, which were issued on January 23, 2024. [Opening Brief at 51]. The Court should decline to adopt this view.

Carrington's complaint regarding ineffective assistance of counsel is not new. Review of the docket in both the criminal case in the Middle District of North Carolina and the civil commitment case in the Eastern District of North Carolina reveals that Carrington has been represented by numerous attorneys, both from the Office of the Federal Public Defender as well as private firms. [J.A. 1–10; J.A. 24–37]. Each was met with the same fate: a complaint from Carrington that eventually led to his or her withdrawal from the case. [J.A. 1–10; J.A. 24–37]. In fact, Carrington's *pro se* notices of appeal, filed in both his criminal and civil cases, specifically state ineffective assistance of counsel as

---

[1] Under Carrington's own theory regarding the definition of "reasonableness", a delay of nine months is patently unreasonable. [Opening Brief at 31 (arguing the Government's Certificate of Dangerousness was untimely filed nine months after the order of commitment under section 4241(d))].

grounds for appeal.[2] [J.A. 9; J.A. 29]. However, his ineffective assistance of counsel claim was not briefed before this Court in either case, and therefore no remedy was sought.

Only after Judge Heytens addressed the issue of ineffective assistance of counsel in his concurrence on appeal did Carrington request relief for ineffective assistance of counsel under Rule 60(b). And even then, he waited another **eleven months** to do so. But the concurrence commenting on the efficiency of Carrington's counsel should not save his untimely pursuit of relief. Rather, the operative date should be the date of Carrington's civil commitment—March 20, 2023. His ineffective assistance of counsel claim was ripe for appeal, and a remedy was available to him. To conclude that the operative date is anything other than the date of his civil commitment "would permit those filing 60(b) motions to wait indefinitely, shifting the starting point for determining timeliness forward[.]" *Moses v. Joyner*, 815 F.3d 163, 167 (4th Cir. 2016). Doing so would cause Rule 60(c) to "quickly lose all meaning" and "erode the 'principle of finality . . . essential to the operation of our criminal justice system' and the respect" owed to district court judgments." *Id.* (quoting *Teague v. Lane*, 489 U.S. 288 (1989)).

---

[2] Carrington's handwritten notice of appeal in his criminal case, docketed on September 29, 2022, which was addressed in this Court's published opinion in Case Number 22-7138, is available on the criminal docket in the Middle District of North Carolina at Docket Entry 71. Carrington's handwritten notice of appeal, which culminated in this Court's unpublished opinion in Case Number 23-6348, is available on the civil commitment docket in the Eastern District of North Carolina at Docket Entry 28, filed on April 10, 2023.

In short, the analysis of Carrington's ground for relief should cease here, as his request for relief under Rule 60(b) was untimely. Despite arguments to the contrary, Carrington's failure to timely seek that remedy should not be used now to elongate the process at the prejudice of the United States. Thus, his appeal should be dismissed.

### b. Carrington did not present a meritorious claim of ineffective assistance of counsel.

The entirety of Carrington's Rule 60(b) motion hinges on a finding that his counsel provided ineffective assistance throughout the criminal and civil processes. The Fourth Circuit "has unequivocally held that there is no right to effective assistance of counsel in civil cases generally." *Al Sabah v. Agbodjogbe*, No. SAG-17-730, 2020 WL 7351603, at *2 (D. Md. Dec. 14, 2020) (citing *Lawler v. Am. Bldg. Contrs., Inc.*, 149 F. App'x 131, 133 (4th Cir. 2005) (per curiam) ("[A] litigant in a civil action has no constitutional or statutory right to effective assistance of counsel.")). While this Court has not addressed whether an individual committed under section 4246 is entitled to effective assistance of counsel under the Sixth Amendment, this Court did determine that individuals civilly committed under a similar provision of Chapter 313 do not have such a right. *See United States v. Blackledge*, 751 F.3d 188, 197 (4th Cir. 2014) (holding that a person subject to civil commitment under the Adam Walsh Act, 18 U.S.C. § 4248, "does not have a right to effective assistance of counsel under the Sixth Amendment"). Additionally, this Circuit has consistently declined the invitation to determine whether such a right exists under the Due Process Clause

of the Fifth Amendment.  *See id.*; *United States v. Lesch*, 717 F. App'x 244, 247 (4th Cir. Feb 9, 2018) (per curiam).

The Court need not resolve that question here.  Nor does the Court need to resolve the question of what standard would govern a constitutional claim of ineffective assistance of counsel in this context, if such a right exists.  While the district court relied on *Strickland v. Washington*, 466 U.S. 668 (1984), *Strickland* concerned the right to effective assistance of counsel under the Sixth Amendment.[3]  It is unclear whether that standard would apply here, or whether some other standard would apply, such as the "fundamentally unfair" inquiry applied by several courts of appeals in immigration cases[4] and applied with regard to an individual committed under section 4246 in *United States v. Mahoney*, 105 F. Supp. 3d 140, 142–43 (D. Mass. 2015).[5]  Both standards require

---

[3]  Per *Strickland*, a person's right to effective assistance of counsel is violated when (1) counsel's performance falls below an objective standard of reasonableness, as measured by "prevailing professional norms", and (2) the defendant suffered prejudice as a result.  466 U.S. at 687–88.

[4]  *See, e.g.*, *Santiago-Rodriguez v. Holder*, 657 F.3d 820, 834-35 (9th Cir. 2011) (holding individuals do not have a Due Process right to effective assistance of counsel in immigration proceedings); *see also Afanwi v. Mukasey*, 526 F.3d 788, 798 (4th Cir. 2008) ("[W]e hold today, contrary to some of our sister circuits, that retained counsel's ineffectiveness in a removal proceeding cannot deprive an alien of his Fifth Amendment right to a fundamentally fair hearing."), *vacated on other grounds*, *Afanwi v. Holder*, 558 U.S. 801 (2009); *Carbajal v. Lynch,* 655 F. App'x 959, 963 n.* (declining to revisit the holding in *Afanwi*).

[5]  According to *Mahoney*, in assessing whether incompetent legal representation rendered the proceeding "fundamentally unfair," the court must assess whether the attorney's decision-making created a "reasonable probability of

a showing of prejudice. *See Mendez v. Craven*, No. 5:07-HC-2173, 2008 WL 5640104*,* at \*2 (E.D.N.C. Apr. 2, 2008), *aff'd* 288 F. App'x 66 (4th Cir. 2008) (declining to select a standard for ineffective assistance of counsel claims involving civil commitment under 18 U.S.C. § 4246, but rejecting the claim for failure to demonstrate "either prejudicial or fundamental unfairness in the reasonable presentation of petitioner's case"); *Lesch*, 717 F. App'x at 247 (assuming Lesch had a right to effective counsel, "regardless of its source, he would have to show that he was prejudiced by the alleged ineffective assistance").

The Supreme Court has instructed that prejudice in this context means "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Undisputably, it is a high bar, as the attorney assigned "observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

---

prejudice." 105 F. Supp. 3d at 143 (citing *Zeru v. Gonzales*, 503 F.3d 59, 71 (1st Cir. 2007) ("to succeed on an ineffective assistance of counsel claim, petitioners must show 'a reasonable probability of prejudice' resulting from their former representation." (quoting *Saakian v. I.N.S.*, 252 F.3d 21, 25 (1st Cir. 2001)))).

Therefore, this Court need only consider whether the results of Carrington's case could have been different. *See Lesch*, 717 F. App'x at 247.

The district court, in a thoughtfully written opinion, specifically addressed Carrington's suggestion that, if his civil counsel had objected to the section 4246 certificate under the premise established by this Court in *United States v. Wayda*, 966 F.3d 294, 304 (4th Cir 2020), he would not have been committed. "Critically, in making this assessment, the pertinent question is not whether [Carrington] had a valid *Wayda* claim, or even whether it would have been prudent for counsel to raise such an argument . . . [i]nstead, the court must ask whether the performance of counsel in choosing not to raise a timeliness objection was so deficient that Respondent was wholly deprived of his right to effective counsel." [J.A. 108].

Focusing on the requirement of prejudice, the district court assessed Carrington's likelihood of success on his *Wayda* timeliness claims. The entirety of Carrington's argument hinges on the premise that his hospitalization under 18 U.S.C. § 4241(d) was untimely (and thus unconstitutional), thus contaminating the Certificate of Dangerousness filed against him in the Eastern District of North Carolina. As the district court thoroughly explained, Carrington's argument lacks supportive precedent and thus, fails.

On August 23, 2021, Carrington was found not competent to stand trial in the Middle District of North Carolina and ordered committed to the custody of the Attorney General for hospitalization in a suitable facility. [J.A. 155–60]. This order corresponds with section 4241(d), which allots a "reasonable period

of time, not to exceed four months, as is necessary to determine whether there is a substantial probability in the foreseeable future that he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d). Per Carrington, his hospitalization began on August 23, 2021, and thus expired on or about December 23, 2021. [Opening Brief at 31]. However, this application of section 4241(d) makes little sense.

The purpose of section 4241(d) is to provide the defendant "treatment in a suitable facility" for the purpose of restoring him or her to competency. § 4241(d). Notably, Congress did not indicate that such treatment could occur just anywhere. They specified that it must be conducted at a "suitable facility," which they defined as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2). Thus, Congress's expectation was that the defendant spend no more than four months in a facility that provides the requisite care and treatment to restore the defendant to competency in light of his specific needs. To posit that the four-month period begins the moment the order is entered, while the defendant is being housed in the custody of the United States Marshals Service at whichever jail is closest to the courthouse, or possibly out on bond, is nonsensical and inconsistent with the statutory purpose.

The sensible reading of section 4241(d) is that hospitalization begins upon the defendant's arrival at the suitable facility. "As used in 18 U.S.C. Chapter 313 and this subpart, 'hospitalization in a suitable facility' includes the Bureau's designation of inmates to medical referral centers or correctional institutions that

27

provide the required care or treatment." 28 C.F.R. § 549.41.  Only the Attorney General has the authority, based on section 4241(d), to designate a suitable facility, and the Attorney General has not designated the custody of the U.S. Marshals or any county jail or pretrial facility as suitable for this purpose.

Rather, this Court previously concluded that, in the context of a section 4248 case, "there is no substantive difference between vesting legal custody in the Attorney General and legal custody in the BOP." *United States v. Savage*, 737 F.3d 304, 309 (4th Cir. 2013).  This Court went on to explain that "[u]nder these clearly delineated relationships, the BOP operates at the Attorney General's direction, and serves as that officer's designee.  The Attorney General and the BOP are thus equivalent entities for the purposes of a § 4248 'custody' analysis." *Id.*

While *Savage* addressed this issue in a section 4248 commitment case, the logic nonetheless applies to language of section 4241(d), especially in light of the regulatory definition of "hospitalization in a suitable facility," which specifically identifies the BOP and its facilities.  28 C.F.R. § 549.41.  In reading section 4241(d), this Court should find, as it did in *Savage*, that the BOP operates at the Attorney General's discretion, and therefore is an equivalent entity.

In so finding, it logically follows that it is a defendant's arrival at the suitable facility, maintained by the BOP and the BOP alone, that triggers the four-month period enumerated in section 4241(d)(1).  Here, Carrington was not in the custody of the BOP between August 23, 2021, and January 18, 2022, and therefore was not housed in a suitable facility as designated by the Attorney

General. [J.A. 162]. Moreover, Carrington was not receiving the requisite treatment required by Congress in section 4241(d), as he was housed at facilities incapable of providing care or treatment commensurate with Carrington's needs. Carrington was transported on January 18, 2022, to FMC Butner, which operates as a mental health hospital and contains the necessary staffing and resources to meet the strict needs of section 4241(d) evaluations. [J.A. 162]. As the statutory scheme requires hospitalization for treatment "in a suitable facility" for "a reasonable period of time, not to exceed four months," the United States properly calculated the four-month period as commencing on the date of Carrington's arrival at the suitable facility—January 18, 2022—and expiring on May 18, 2022. § 4241(d)(1).

While this Court has not firmly decided the issue, in at least one unpublished opinion, the Court treated the date of hospitalization as the date on which the four-month period cited in section 4241(d)(1) commences. *See United States v. Flannery*, No. 88-5605, 1989 WL 79731, at *3–4 (4th Cir. July 13, 1989) (measuring the section 4241(d)(1) period from the date of hospitalization and noting that "the statute provides only that the examination must occur within four months"). More recently, this Court has remarked on the reasonableness of this reading by the United States. *See, e.g.*, *United States v. Curbow*, 16 F.4th 92 (4th Cir. 2021) (Traxler, J., concurring) ("The time periods of § 4241(d)(1) and (d)(2) simply establish the maximum periods of *hospitalized evaluation and treatment* authorized for determining a defendant's competence to stand trial, not the maximum period that the defendant may be held in the custody of the

29

Attorney General.") (emphasis in original). In fact, this Court remarked on this precise issue in Carrington's civil appeal of his commitment. *United States v. Carrington*, No. 23-6348, 2024 WL 243317, at *3 (4th Cir. Jan. 23, 2024) (unpublished). The Court found that it was not "plainly erroneous to conclude that the four-month period established [by] § 4241(d)(1) kicks in only once the defendant is hospitalized." *Id.* "[T]he text of the statute can be reasonably read to tie this time limit to the start of the hospitalization, not commitment." *Id.*

As cited by the district court, numerous other courts have "almost uniformly" adopted these conclusions. [J.A. 110–11]. *See United States v. Rendon-Romero,* No. 5:21-CR-436-D, 738 F.Supp.3d 697, 702 (E.D.N.C. 2024) (holding that "section 424l(d)'s four-month clock begins to run upon hospitalization of the defendant at a suitable facility, not during any pre-hospitalization period"); *United States v. Alhindi,* 97 F.4th 814, 826 (11th Cir. 2024) (per curiam) (holding the same and recognizing that "§ 4241 implicitly recognizes that hospitalization cannot occur instantaneously"); *United States v. Magassouba,* 544 F.3d 387, 405 (2d Cir. 2008) (holding that the initial purpose of the custodial hospitalization period is "evaluative"); *United States v. Donnelly,* 41 F.4th 1102, 1105 (9th Cir. 2022) (recognizing that § 424l(d)'s text "makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized"); *United States v. Lara,* 671 F.Supp.3d 1257, 1261 (D.N.M. 2023) (same). While not universally accepted, *see, e.g., United States v. Carter,* 583 F.Supp.3d 94, 100 (D.D.C. 2022) (finding that any delay in the defendant's transportation counts against the

section 4241(d)(l) four-month hospitalization period), there appears to be a strong presumption that hospitalization begins upon arrival at the suitable facility, not before.

With this analysis in mind, the Court is well-positioned to answer the penultimate question in this case: would Carrington have experienced a different outcome had his attorney filed a motion to dismiss based on *Wayda*'s timeliness standard. The answer is a resounding no.

Carrington's counsel, appointed by the district court from the Office of the Federal Public Defender, were not inexperienced in mental health civil commitment cases. Rather, the two attorneys who entered appearances on Carrington's behalf appear to handle the crux of commitment cases arising under section 4246, and more importantly, were involved in cases challenging the certificate of dangerousness based on *Wayda*. *See e.g.*, *United States v. Wayda*, No. 5:19-HC-2172-BO (E.D.N.C. 2019) (noting Joseph H. Craven as counsel for Respondent Sean Wayda); *United States v. Curbow*, No. 5:19-HC-2218-D (E.D.N.C. 2020) (noticing Joseph H. Craven as counsel for Respondent Gary Curbow); *United States v. Berry*, No. 5:20-HC-2085 (E.D.N.C. 2024) (noticing Joseph H. Craven as counsel for Respondent Duane Letroy Berry); *United States v. Harris*, No. 5:22-HC-2182 (E.D.N.C. 2026) (noticing Joseph H. Craven and Sonya M. Allen as counsel for Respondent Bryant Lamont Harris). There can be no doubt that Carrington's counsel from the Federal Public Defender's Office, who represented him at the civil commitment hearing in this matter, was well versed in when and how to raise a timeliness argument under *Wayda* and

31

*Curbow*.  In fact, they have done so in many other cases.  *See, e.g.*, *United States v. Berry*, No. 5:20-HC-2085 (E.D.N.C. 2024); *United States v. Harris*, No. 5:22-HC-2182 (E.D.N.C. 2026); *United States v. Brown*, No. 5:20-HC-2001-M (E.D.N.C. Mar. 16, 2021) (noting docket entry 17 grants a motion to stay ruling on respondent's motion to dismiss pending the resolution of *Curbow* by the Fourth Circuit Court of Appeals and noting that 24 other cases were similarly stayed).  That Carrington's counsel did not file such a claim here is evidence only of the fact that Carrington's argument lacks merit.

This is further supported by the commentary of this Court in addressing Carrington's civil appeal of his commitment.  *Carrington*, 2024 WL 243317, at *3.  Specifically, the Court noted that Carrington's certificate of dangerousness was filed only **eight** days after his four-month period of hospitalization under 18 U.S.C. § 4241(d) ended, which "was not plainly unreasonable" under the standard established in *Curbow*.  *Id.*  In fact, that is forty-one days less than the time period found reasonable in *Curbow*.  *Curbow*, 19 F.4d at 112–13.

"The Supreme Court has never imposed on defense attorneys a duty to make every nonfrivolous argument, 'regardless of its merit, viability, or realistic chance for success.'"  [J.A. 112 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123, 127 (2009))].  Despite Carrington's argument that his attorney's decision not to raise the *Wayda* timeliness argument was senseless or unreasonable [Opening Brief at 52], that is simply not the case.  Even this Court has, in unpublished cases, opined that both the date of hospitalization and the timing of Carrington's commitment were not plainly erroneous or unreasonable.  *See*

*Flannery*, 1989 WL 79731, at \*3–4; *Carrington*, 2024 WL 243317, at \*3.  Against

this backdrop, it is impossible to conceive how counsel's strategic decision not

to file a *Wayda* motion, needlessly elongating Carrington's time in custody,[6]

could be found prejudicial.  As the district court noted,

> Being uncertain in the face of uncertainty, however, does not amount to a violation of the Sixth Amendment.  The fact that the Fourth Circuit has not yet resolved the timing issue demonstrates that it was not grossly incompetent for Respondent's counsel to lack confidence in the merits of a *Wayda* argument and thus choose not to make one.

[J.A. 112–13].

In short, Carrington's claim of ineffective assistance of counsel fails

because he cannot make the requisite showing of prejudice required by either

*Strickland* or *Mahoney*.[7]  As there exists no reasonable probability that, but for

---

[6]  "[I]t is possible to win a case to the detriment of one's client.  Part of the judgment to be exercised by lawyers is to determine whether a potentially meritorious legal argument is strategically warranted."  [J.A. 113].  Here, the filing of a *Wayda* timeliness motion would have required Carrington to remain in custody (without an order of commitment) while the parties fully briefed the issue and awaited a decision from the district court.  Assuming the Government prevailed, as is likely, Carrington would have then been subject to the civil commitment hearing before he had the opportunity to appeal the district court's *Wayda* decision.  Perhaps Carrington's counsel believed that needlessly raising an argument destined to fail, further elongating Carrington's custody, was the improper course of action when Carrington could instead participate in treatment and improve his chances of conditional release under 18 U.S.C. § 4246(e).

[7]  Even if Carrington could make the requisite showing of prejudice, there is insufficient evidence in the record that Carrington's counsel was so deficient as to meet the standard denoted in *Strickland* or *Mahoney*.

counsel's purported errors, the result of the proceeding would have been different, there can be no relief for Carrington.  As such, the district court did not abuse its discretion in denying the Rule 60(b) motion.

### c.  The United States will suffer unfair prejudice if the judgment is set aside.

Of significant importance here is the prejudice the United States would suffer if judgment here is set aside.  This harm would be felt not only by the United States as a governmental entity, but by the people of the United States that the Government is sworn to protect.

Carrington requests that the district court's order of commitment be set aside, which would result in Carrington's release to the community.  But, as referenced above, Carrington has not acted with haste in raising this issue.  Instead, Carrington declined to raise it in **either** his criminal or civil appeal, raising it **twenty-one months** after his commitment, wherein the alleged ineffective assistance of counsel occurred.  Even more, he only raised the claim with the district court after a concurring opinion from a member of this Court suggested the notion, doing so **eleven months** after this Court's opinion issued.  When considering the timeliness of the instant arguments, coupled with the gravity of the relief sought, the Government would be unduly prejudiced—as would Carrington himself.

Carrington does not contend that he should never have been found to meet the statutory criteria for commitment as a mentally ill and dangerous individual under section 4246, after being found not competent to stand trial.  As found by

district court, and affirmed by this Court, Carrington meets the criteria for commitment under section 4246. Additionally, as noted in the most recent annual update, Carrington's "continued symptoms of mental illness (i.e., delusions), coupled with his lack of insight, and history of medication resistance are of particular concern." [J.A. 113 n.2]. His "prognosis remains poor due to his failure to consent to antipsychotic medication, lack of insight into his mental illness, and continued evidence of a significant thought disorder."[8] [JA 113 n.2]. Were this Court to grant the relief sought, Carrington would be released to the community, without the benefit of support, release planning, or conditions, as are contemplated when considering a conditional release from a section 4246 civil commitment. Outright release would undoubtedly be disruptive to Carrington himself and would pose a significant danger to the community.

Here, the United States has diligently pursued the instant civil commitment case since at least April 14, 2022, when Carrington was first evaluated for possible civil commitment and no later than May 26, 2022, when the Certificate of Dangerousness was filed. [JA 38]. Since the inception of the case, Carrington, through his numerous *pro se* filings, has prolonged the matter

---

[8] As the district court posits, "it may be in [Carrington]'s best interest to focus his attention on the treatment opportunities available at FMC Butner rather than attacking his commitment order through motions practice." [J.A. 113–14 n.2]. While Carrington certainly has the legal right to continue filing motions related to his release, his engagement in the therapeutic community at FMC Butner would undoubtedly make Carrington a better candidate for either transfer to a state facility or release under the supervision of United States Probation. *See* 18 U.S.C. § 4246(e).

and required numerous counsel to withdraw and appear in the case. Despite Carrington's behavior, the United States made every effort to move the case forward in a manner that **eliminated** the time Carrington spent as an incompetent, unrestorable person waiting for a section 4246 determination. *Wayda*, 966 F.3d at 308. If the judgment is now set aside, it would create a loophole in which respondents could seek release despite the Government proceeding in a way consistent with law and statute, endangering the public and negating the very purpose of section 4246. This is especially concerning in light of this Court's determination in *Curbow* that the section 4246(a) eligibility provisions are not jurisdictional. *Curbow*, 16 F.4th at 116–17.

Accordingly, the United States would be unfairly prejudiced if Carrington's civil commitment was set aside almost two years after it was ordered.

> **d. Carrington cannot demonstrate that extraordinary circumstances require relief.**

Carrington has failed to establish extraordinary circumstances to justify setting aside his Order of Commitment.

The Fourth Circuit has not directly addressed whether Rule 60(b)(6)'s narrow category of "extraordinary circumstances" includes a claim of ineffective assistance of counsel. However, at least one other circuit court has determined that ineffective assistance of counsel does not support a claim for relief under Rule 60(b). *See Siner v. Eastside Cmty. Invs., Inc.*, 22 F. App'x 642 (7th Cir. Nov. 21, 2001) ("ineffective assistance of counsel does not fall under the rubric of Rule

60(b)") (citing *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801–02 (7th Cir. 2000)). The United States maintains that Carrington possesses no such right to effective assistance of counsel, and that even if such a right existed, Rule 60(b)(6) is not the proper vehicle to raise such a claim. Such matters should have been addressed in either one, or both, of Carrington's original appeals. Alternatively, Carrington could have sought relief via a habeas petition, the widely accepted vehicle for claims of ineffective assistance of counsel. *See* 28 U.S.C. § 2241; 18 U.S.C. § 4247(g) ("Nothing contained in section 4243, 4246, or 4248 precludes a person who is committed under either of such sections from establishing by writ of habeas corpus the illegality of his detention.").

Even assuming, *arguendo*, that a Rule 60(b)(6) motion is the proper vehicle for an ineffective assistance of counsel claim generally, Carrington cannot demonstrate that his circumstances here are truly extraordinary. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, at 873 (1988) (Rehnquist, C.J., dissenting) ("[W]e have repeatedly instructed that only truly 'extraordinary circumstances' will permit a party successfully to invoke the 'any other reason' clause of § 60(b). This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." (internal citations omitted)); *Aikens v. Ingram*, 652 F.3d 496, 500–01 (4th Cir. 2011).

Here, Carrington posits that his charge arises "from a single overheated email sent to a U.S. Senator in the aftermath of the 2020 election" for which conviction would have carried a statutory maximum sentence of five years. [Opening Brief at 61]. As a result, this is an extraordinary circumstance that

requires "case-by-case inquiry." [Opening Brief at 60]. "Treating Carrington as the equivalent of a murderer or child rapist is unjustified[.]" [Opening Brief at 61]. This summary of Carrington's situation is both inaccurate and misleading.

Carrington's commitment is not based on "a single overheated email," but rather based on a thirty-plus-year spread of violent and dangerous actions linked to his mental health condition. [J.A. 264–70]. The conduct that precipitated his criminal charges in the Middle District of North Carolina included "numerous emails containing threats to kill government officials, including Senator Ron Johnson."[9] [J.A. 264]. But this was not a one-off for Carrington. Rather, Carrington has threatened Congressman John Murtha; Senators Elizabeth Dole, Edward Kennedy, Bill Nelson, Dianne Feinstein, Daniel Akaka, and Dick Durban; North Carolina Governor Roy Cooper; Former Federal Bureau of Investigations Directors Christopher Wray and James Comey; Former Secretary of State Madeleine Albright; Vice President Dick Cheney; and Presidents George Bush, Bill Clinton, Barack Obama, Joe Biden, and Donald Trump. [J.A. 264–65].

Arguing that Carrington is not a murderer or child rapist is not only a red herring, but a clear attempt to "conflate commitment with punishment." [J.A. 116]. Nothing in section 4246 requires that Carrington be "a murderer or child rapist" in order to be subject to civil commitment. Rather, section 4246 requires the civil commitment of a person suffering from a mental disease or defect whose

---

[9]  Excerpts of the emails sent by Carrington are available in Dr. Sharf's report, located in the Sealed Joint Appendix, pages 264 through 265.

release would create a substantial risk of bodily injury to another person or serious damage to the property of another.  18 U.S.C. § 4246(d).  "Overt acts of violence are not required to prove substantial dangerousness in a § 4246(d) case." *United States v. Debenedetto*, 618 F. App'x 751, 753 (4th Cir. Aug. 18, 2015) (per curiam) (citing *United States v. Williams*, 299 F.3d 673, 677 (8th Cir. 2002)). It is not disputed in this record that Carrington meets criteria for civil commitment.  His commitment, based on a totality of the circumstances analysis conducted by the civil commitment court under section 4246(d), does not rise to the level of an extraordinary circumstance, and the district court did not abuse its discretion in finding such.

In short, Carrington cannot establish the four threshold requirements for Rule 60(b) relief.

### 2. Respondent cannot establish he is entitled to relief under any of the provisions of Rule 60(b).

As Carrington cannot meet the four threshold requirements warranting relief under Rule 60(b), the analysis may end there.  However, assuming *arguendo* that Carrington has met the threshold requirement for relief, he must now meet the textual requirement of Rule 60(b)(6).  He cannot.

In his Rule 60(b) motion for relief, Carrington seems to acknowledge that he is ineligible for relief under any of the specific grounds identified in Rule 60(b)(1)–(5).  [J.A. 69].  Thus, Carrington relies solely on the "open-ended language of 60(b)(6)," which allows a court to set aside a judgment for "any other reason that justifies relief."  *Moses*, 815 F.3d at 168; Fed. R. Civ. P.

60(b)(6). While the language appears open-ended, Rule 60(b)(6) is quite narrow, having been "firmly reined in by the Supreme Court." *Id.* Relief under Rule 60(b)(6) "'is extraordinary and is only to be invoked upon a showing of exceptional circumstances.'" *Welsh*, 879 F.3d at 536 (quoting *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979)). In determining whether relief under Rule 60(b) is appropriate, "a district court must delicately balance 'the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of [a]ll the facts.'" *Welsh*, 879 F.3d at 536 (quoting *Compton*, 608 F.2d at 102). Rule 60(b)(6) should be applied only where "such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949).

This is not such a case.

On appeal, Carrington argues that the district court relied on a "faulty legal premise" in denying relief. [Opening Brief at 9]. Carrington is mistaken. As discussed in full *supra*, Carrington's timeliness argument was unlikely to succeed on the merits. While this Court has declined to rule on the "thorny issue", *Curbow*, 16 F.4th at 112–13, "virtually every court to consider the question has reached the same conclusion" [J.A. 112]: that it is not unreasonable to hold that hospitalization begins on the date of arrival at the suitable facility. Even this Court, in unpublished opinions, concluded that the Government did not act in a manner that was plainly unreasonable or erroneous in relation to Carrington's hospitalization. *See Flannery*, 1989 WL 79731, at *3–4; *Carrington*,

2024 WL 243317, at *3.  If the purported errors were not plain, it is difficult to understand how relief would be necessary to accomplish justice.

The Court also cannot ignore the significant risk that would be created upon a granting of Carrington's Rule 60(b)(6) motion, which would run contrary to the very notion of justice.  As explained in more detail *supra*, Carrington was found to meet criteria for civil commitment as a mentally ill and dangerous person.  That finding by the district court is not at issue, and Carrington's need for custody, care, and treatment pursuant to section 4246(d) is well established by the records before this Court.  "Moreover, since that determination, he has been reevaluated twice and found to continue to meet § 4246's criteria for commitment."  [J.A. 113].  Carrington is "irritable, angry, hostile, delusional, and hyperverbal," none of which bode well for his assimilation back into the community at present.  [J.A. 113].

Moreover, this Court has instructed that "if the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal."  *Aikens v. Ingram,* 652 F.3d 496, 501 (4th Cir. 2011) (citing *Dowell v. State Farm Fire & Casualty Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir. 1993)).  Here, Carrington could have raised the claim of ineffective assistance of counsel on appeal.  In fact, in his *pro se* notices of appeal, Carrington specifically alleges ineffective assistance of counsel, though this argument was never presented to this Court for consideration in either the criminal or civil appeal.  Alternatively, Carrington could have timely raised the issue in a properly filed habeas petition.  He did

41

not. The Supreme Court instructs that "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States,* 340 U.S. 193, 198 (1950). Such an end has arrived, and Carrington is not entitled to the relief sought.

An order granting Carrington the relief he seeks would pay no heed to binding precedent directing courts to "strictly" interpret Rule 60(b) to "preserve the finality of judgments", *Fed. Trade Comm'n v. Ross*, 74 F.4th 186, 190–91 (4th Cir. 2023), and would open the floodgates to parties who chose not to appeal but in hindsight determine their choices were wrong. *Ackermann v. United States*, 340 U.S. at 198. Because such actions are not permitted, relief cannot be granted to Carrington under Rule 60(b)(6).

*remainder of page left intentionally blank*

# CONCLUSION

For the foregoing reasons, the United States respectfully submits that the judgment of the district court should be affirmed.

Respectfully submitted, this 21st day of May, 2026.

<div style="margin-left:40%">

W. ELLIS BOYLE
*United States Attorney*


BY: */s/ Genna Danelle Petre*
*Special Assistant United States Attorney*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: 919-856-4530

</div>

# CERTIFICATE OF COMPLIANCE

1.  Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

    ☐ _____ Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

    ☒ 10,392 Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B))*.

2.  Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 365 using fourteen-point *Calisto MT*, a proportional-width typeface.

<div align="right">

*/s/ Genna Danelle Petre*
*Special Assistant United States Attorney*

</div>